## COMMONWEALTH vs. A JUVENILE.

Suffolk. April 7, 1975. — September 11, 1975.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Constitutional Law,* Freedom of speech, Due process of law, Idle and disorderly person. *Idle and Disorderly Person.*

The provision of G. L. c. 272, § 53, as amended through St. 1973, c. 1073, § 20, for the punishment of "idle and disorderly persons," as construed in *Alegata* v. *Commonwealth,* 353 Mass. 287, 304 (1967), to encompass one who "makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present," is unconstitutionally overbroad under the First Amendment to the United States Constitution, and may not validly be applied against persons for the use of offensive and abusive language or expressive conduct. [584-595]

The provision of G. L. c. 272, § 53, as amended through St. 1973, c. 1073, § 20, for the punishment of "idle and disorderly persons," as construed in *Alegata* v. *Commonwealth,* 353 Mass. 287, 304 (1967), to encompass one who "engages in fighting or threatening, or in violent or tumultuous behavior," or who "creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor," is not unconstitutionally void for vagueness [595-599]; however, the statute, as construed in *Alegata* and herein, relates exclusively to activities which involve no lawful exercise of a right under the First Amendment to the United States Constitution, and may validly be applied only to conduct involving no such right [599].

COMPLAINT received and sworn to in the Boston Juvenile Court on March 21, 1974.

The case was reserved and reported by *Poitrast,* J.

*John F. Palmer* for the defendant.

*Joseph A. McDonough,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, J. In this case we conclude, in a result which is required by relevant decisions of the United

States Supreme Court, that the "idle and disorderly persons" provision of G. L. c. 272, § 53, cannot constitutionally be the basis for criminal convictions for the use of offensive and abusive language.

The case comes to this court by a report from the Boston Juvenile Court, Appellate Division, which had before it an appeal from a finding that the juvenile involved was a disorderly person within the meaning of § 53.[1]  The case was reported in accordance with G. L. c. 278, § 30A, and G. L. c. 119, § 56.[2]

As reported by the judge of the Juvenile Court the questions for our determination are (1) whether the court should grant the defendant's motion to dismiss filed on appeal with the Appellate Division, and (2) what standards should apply in considering offenses involving the use of language and related conduct under a disorderly person complaint pursuant to c. 272, § 53.  More broadly stated, the issue is whether the offense of being an idle and disorderly person under § 53 in so far as it encompasses speech or expressive conduct is violative of the First Amendment to the United States Constitution as made applicable to the States through the Fourteenth Amendment.  The claim raised is that the disorderly person provision of § 53 is unconstitutionally overbroad

---

[1] In its entirety, G. L. c. 272, § 53, as amended through St. 1973, c. 1073, § 20, provides:  "Common night walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly act or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, *idle and disorderly persons*, prostitutes, disturbers of the peace, keepers of noisy and disorderly houses and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment" (emphasis added).

[2] The appellation Boston Juvenile Court, "Appellate Division," does not track the words of the applicable statutory sections; yet it is clear that jurisdiction of the appeal is in the Boston Juvenile Court (G. L. c. 119, § 27) and that review may be had in this court by report from said Juvenile Court (G. L. c. 119, § 56).

with respect to protected First Amendment expression. In addition, the provision is challenged on its face as being void for vagueness.

We state the facts of this case as taken from the report, which incorporates a statement of particulars as filed by the Commonwealth in the trial court. At approximately 4:30 P.M. on March 20, 1974, the defendant while in Jordan Marsh Company, a Boston department store, for reasons not disclosed, began yelling at a saleswoman using such phrases as "f...... a......" and the like. He continued his tirade when a female security guard employed by the store arrived, calling her, among other things, a "f...... a......" and a "f...... pig." Apparently, the store employees were unable to control the situation and the defendant continued his onslaught of abusive speech. A crowd of approximately 100 shoppers gathered. When asked by the security guard to leave the store, the defendant, in response, gestured by raising the third finger of his hand, symbolizing what he was verbally expressing. Finally, and it is not clear from the record how, the defendant was escorted from the store. But the defendant did not remain outside; rather he returned once again to assail the employees with his offensive screams and gestures. All told the defendant's activities in the store went on for forty minutes.

The defendant was adjudged delinquent on a complaint charging him with being a disorderly person. The record does not reveal whether the adjudication was based on the defendant's speech, including his offensive and coarse words, or was based on his purely physical conduct in refusing to leave and returning to the store. Therefore, in so far as the finding may have been based entirely or in part on the speech involved, this court is required to review the case as implicating free speech rights. See *Bachellar* v. *Maryland,* 397 U. S. 564, 569-571 (1970).

We can infer (and indeed we probably understate the case) that the defendant's outcries were unpleasant to the

ears of the saleswoman, the security guard, and the crowd of shoppers congregated in the busy downtown store. We can also infer that at least the store employees were involuntarily present during all of this episode. Thus, even were the shoppers free to avert their eyes and close their ears (see *Cohen* v. *California,* 403 U. S. 15, 21-22 [1971]), this was clearly not the case with the store employees who could not be expected to abandon their respective counters. To a large degree these employees were captive to the defendant's speech. However, the issues we must consider are whether the defendant's words and conduct, to the extent that they were expressive, were first, as a statutory matter, criminal under § 53 and if so, second, whether those words and conduct may, consonant with our Federal and State Constitutions, be the subject of criminal sanctions in the manner provided for by the disorderly person provision of § 53.

As will be seen at the conclusion of this opinion, we have answered the first reported question (whether the complaint should have been dismissed) in the affirmative; we have answered the second question by a definition as to the *conduct* which may be constitutionally proscribed under a charge of being an idle and disorderly person *as we have construed that term.* As will further be made clear, the effect of our decision is that convictions may no longer be constitutionally obtained under § 53 for the offense of being an idle and disorderly person in circumstances where the use of offensive and abusive language is relied on as proof of the offense. We emphasize that our holdings are required by decisions of the United States Supreme Court which have defined the scope of First Amendment protection in the area of offensive speech.[3]

---

[3] The case of *Rosenfeld* v. *New Jersey,* 408 U. S. 901 (1972), is illustrative of the majority position in relevant Supreme Court cases. In the *Rosenfeld* case the defendant was to address a school board meeting. In speaking to the approximately 150 persons attending the meeting, including parents and children, the defendant cursed, among others, the teachers, the school board, the town and the

1. *Idle and Disorderly Person.* In reviewing the crime of being a disorderly person under § 53, we, as is required by the First Amendment, start out with the primary postulate that any statute which regulates speech requires the strictest of our scrutiny because "the line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn." *Speiser* v. *Randall,* 357 U. S. 513, 525 (1958).

This court will consider the facial validity of the § 53 disorderly person offense despite the fact that the defend-

nation generally using the appellation "m..... f....." at least four times.   He was convicted under a statute which provided:   "Any person who utters loud and offensive or profane or indecent language in any public street or other public place, public conveyance, or place to which the public is invited . . . [i]s a disorderly person," quoted in 408 U. S. at 904 (1972).   The statute had been construed by the New Jersey Supreme Court to cover only words "of such a nature as to be likely to incite the hearer to an immediate breach of the peace or to be likely, in the light of the gender and age of the listener and the setting of the utterance, to affect the sensibilities of a hearer." *State* v. *Profaci,* 56 N. J. 346, 353 (1970), quoted in 408 U. S. at 904. Nevertheless, in a one sentence disposition, the Supreme Court held that "Judgment [is to be] vacated and case remanded for reconsideration in light of *Cohen* v. *California,* 403 U. S. 15 (1971) and *Gooding* v. *Wilson,* 405 U. S. 518 (1972)." On remand the conviction was overturned by the New Jersey court. *New Jersey* v. *Rosenfeld,* 62 N. J. 594 (1973).

From the majority opinion it can be inferred that five Justices of the court are willing to reaffirm the principles of those two cases in the area of offensive speech and narrowly to circumscribe the constitutional limit of the State's power to regulate offensive speech.   The facts of the *Rosenfeld* case are readily comparable with those before us; indeed the verbal encounter in that case may be considered by some more offensive.   In addition, and most importantly, while the statute challenged in the *Rosenfeld* case was similar in purpose and effect to the "idle and disorderly persons" provision of § 53, it would be fair to say that the statute in the *Rosenfeld* case previously had been authoritatively construed by the New Jersey court in such a manner as to make it narrower and more limited in effect than our own judicial construction of § 53.   Yet the statute in the *Rosenfeld* case was found unconstitutionally overbroad and the conviction reversed.   Given these facts, the result in the *Rosenfeld* case — invalidation of the offensive speech statute — would a fortiori compel the result we reach in this case.

ant's speech might be of the class properly the subject of State regulation, for "[i]t matters not that the words appellee used might have been constitutionally prohibited under a narrowly and precisely drawn statute." *Gooding v. Wilson,* 405 U. S. 518, 520 (1972). See generally, *Bigelow v. Virginia,* 421 U. S. 809, 815-818 (1975), and cases cited therein. Thus if a law is found deficient as unconstitutionally overbroad in its potential application to protected speech, it may not be applied even to the person raising the challenge though that person's speech is arguably unprotected by the First Amendment. This follows since "[t]he statute, in effect, is stricken down on its face." *Coates v. Cincinnati,* 402 U. S. 611, 620 (1971) (White, J., dissenting). See generally, note, The First Amendment Overbreadth Doctrine, 83 Harv. L. Rev. 844 (1970).

Review by this court of the constitutional validity of the § 53 disorderly person provision is not limited to the textual wording of that section, since we may also consider the authoritative construction given that statute by this court. See *Winters v. New York,* 333 U. S. 507, 514 (1948); *Commonwealth v. Brasher,* 359 Mass. 550, 553 (1971). It is clear that in *Alegata v. Commonwealth,* 353 Mass. 287, 302 (1967), we have authoritatively construed the disorderly person provision of the statute. In that case the provision was challenged on vagueness grounds. By judicial construction, we attempted to give additional definitional content to the term "idle and disorderly persons." In doing so, we drew on a long common law and statutory history. Given that history and relying on the pattern of legislative revisions, we engrafted onto § 53 the Model Penal Code definition of the offense of disorderly conduct. See Am. Law Inst., Model Penal Code, § 250.2 (Proposed Official Draft, 1962), which provides: "A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (a) engages in fighting or

threatening, or in violent or tumultuous behavior; or (b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. 'Public' means affecting or likely to affect persons in a place to which the public or a substantial group has access," quoted in *Alegata* v. *Commonwealth,* 353 Mass. at 304 (1967).

There is little doubt that the defendant's activities, as a statutory matter, constituted a crime under this definition. There is also little doubt that our limiting construction in the *Alegata* case was intended to cure any vagueness in the provision of § 53 relating to disorderly persons. Nevertheless, in the context of the *Alegata* case we were not called on further to express an opinion as to the constitutional restraints on the State's power to make criminal the use of words so as to be charged as a disorderly person under § 53. However, developments in the area of constitutional adjudication with respect to offensive speech and the First Amendment require that we once again review that aspect of § 53 to determine its constitutional validity.

We state the general principles to be applied. First, if "idle and disorderly persons" is, per se or as construed, "susceptible of application to protected expression," it is unconstitutionally overbroad. *Gooding* v. *Wilson,* 405 U. S. 518, 523 (1974).[4] Second, unless the words "idle and disorderly persons" or our construction thereof are

---

[4] The vagueness and overbreadth doctrine are not always separate and distinct. As stated by Mr. Justice Douglas in *Karlen* v. *Cincinnati,* 416 U. S. 924, 925 (1974) (dissenting opinion), "A vague statute may be overbroad if its uncertain boundaries leave open the possibility of punishment for protected conduct and thus lead citizens to avoid such protected activity in order to steer clear of the uncertain proscriptions. *Grayned* v. *City of Rockford* [, 408 U. S. 104, 109 (1972)]; *Dombrowski* v. *Pfister,* 380 U. S. 479, 486 (1965). A statute is also overbroad, however, if, even though it is clear and precise, it

sufficiently definitive to inform those who are subject to its sanctions what conduct on their part will render them liable to its penalties, the provision is void for vagueness. *Connally* v. *General Constr. Co.* 269 U. S. 385, 391 (1926).

Applying these principles, we hold that, despite the construction given the term "idle and disorderly persons" in the *Alegata* case, the offense of being a disorderly person in so far as it encompasses speech or expressive conduct is not sufficiently narrowly and precisely drawn to ensure that it reach only that speech which the State has a justifiable and compelling interest in regulating,[5] and is therefore overbroad. However, we conclude that as reaching to *conduct* (other than expressive conduct), the § 53 "idle and disorderly persons" provision is neither unconstitutionally overbroad nor vague.

2. *The Overbreadth Issue.* In 1967, when *Commonwealth* v. *Alegata, supra,* was decided there was little if any express constitutional doctrine relative to what in its broadest sense may be termed offensive speech. However, since the date of the *Alegata* case there have been numerous United States Supreme Court decisions concerning convictions for offensive speech. These convictions were obtained under statutes regulating disorderly persons or breaches of the peace as well as statutes and ordinances relating generally to the use of, e.g., abusive, offensive, profane or opprobrious language. See, e.g., *Coates* v. *Cincinnati,* 402 U. S. 611 (1971) (illegal for three or more persons to assemble on sidewalks and

---

prohibits constitutionally protected conduct. *Aptheker* v. *Secretary of State,* 378 U. S. 500, 508-509 (1964); *Shelton* v. *Tucker,* 364 U. S. 479, 488 (1960)."

[5] As will be made clear the finding of overbreadth is limited to that portion of § 53 which may be applied to "unreasonable noise or offensively coarse utterance, gesture or display or . . . [addressing] abusive language to any person present." See *Alegata* v. *Commonwealth,* 353 Mass. at 304.

conduct themselves in a manner annoying to persons passing by); *Papachristou* v. *Jacksonville,* 405 U. S. 156 (1972) (statute regulating, among others, disorderly persons); *Gooding* v. *Wilson,* 405 U. S. 518 (1972) (use to another of opprobrious words or abusive language tending to cause a breach of the peace); *Colten* v. *Kentucky,* 407 U. S. 104 (1972) (disorderly person to, inter alia, congregate with others and refuse to comply with a lawful order to disperse); *Cohen* v. *California,* 403 U. S. 15 (1971) (maliciously and wilfully disturbing the peace by offensive conduct); *Rosenfeld* v. *New Jersey,* 408 U. S. 901 (1972) (disorderly person to use indecent, profane, or offensive language in public place); *Brown* v. *Oklahoma,* 408 U. S. 914 (1972) (prohibition on obscene or lascivious language or words in any public place or in the presence of females); *Lewis* v. *New Orleans,* 408 U. S. 913 (1972), and 415 U. S. 130 (1974) (breach of the peace wantonly to curse or revile or use obscene or opprobrious language to a police officer).   For respective statutes involved in *Lucas* v. *Arkansas,* 416 U. S. 919 (1974); *Kelly* v. *Ohio,* 416 U. S. 923 (1974); *Rosen* v. *California,* 416 U. S. 924 (1974); *Karlen* v. *Cincinnati,* 416 U. S. 924 (1974), see appendix to dissenting opinion of Douglas, J., 416 U. S. at 929 (1974).[6]   See also *Wiegand* v. *Seaver,* 504 F. 2d 303 (5th Cir. 1974), cert. den. app. dism. 421 U. S. 924 (1975).   Cf. *Walker* v. *Dillard,* 523 F. 2d 3 (4th Cir. 1975).

While the circumstances of the cases collected above may have differed, to a large extent the epithets spoken in these cases were of the genre and parlance of the words spoken in this case.   What is most significant,

---

[6] For legal commentary on these offensive speech cases see, e.g., Rutzick, Offensive Language and the Evolution of First Amendment Protection, 9 Harv. Civil Rights Civil Liberties L. Rev. 1 (1974); Rehnquist, Civility and Freedom of Speech, 49 Ind. L. J. 1 (1974); note, "Offensive Speech" and the First Amendment, 53 B. U. L. Rev. 834 (1971); note, Purging Unseemly Expletives from the Public Scene: A Constitutional Dilemma, 47 Ind. L. J. 142 (1971).

however, is that in *all of these cases* except one,[7] and often over vehement dissenting opinions, *each conviction involving the use of words similar to those spoken by the defendant herein, was reversed* on the grounds that the respective statute by its proscription of offensive speech was unconstitutionally overbroad, or unconstitutionally vague, or suffered from a combination of both of these constitutional infirmities.

From the reasoning of these recent Supreme Court cases it would seem that in order to satisfy present constitutional standards, a statute seeking to regulate what we have broadly termed offensive speech will stand only if that statute, in the words of *Chaplinsky* v. *New Hampshire,* 315 U. S. 568, 571-572 (1942), is so narrowly drawn as to be limited to "'fighting' words." Vulgar, profane, offensive or abusive speech is not, without more, subject to criminal sanction[8] for "the First and Four-

---

[7] The exception in *Colten* v. *Kentucky,* 407 U. S. 104 (1972), is explainable in that the activity in the *Colten* case was quite distinguishable from the other cases, did not involve offensive speech, and was in fact characterized by the Supreme Court as not involving First Amendment rights at all. "Colten insists that in seeking to arrange transportation [for a friend whose vehicle was being ticketed] and in observing the issuance of a traffic citation he was disseminating and receiving information. But this is a strained, near-frivolous contention and we have little doubt that Colten's conduct . . . was not, without more, protected by the First Amendment." *Id.* at 109.

[8] Their vigorous dissents suggest that a minority of Justices of the United States Supreme Court are not of this view, but rather believe that the State's subordinating interest in regulating offensive words may in certain instances be broader than fighting words: "When we undermine the general belief that the law will give protection against fighting words *and profane and abusive language* . . . we take steps to return to the law of the jungle" (emphasis added). *Rosenfeld* v. *New Jersey,* 408 U. S. 901, 902 (1972) (Burger, C.J., dissenting). "The speech uttered by Mrs. Lewis to the arresting officer *'plainly'* was profane, *'plainly'* it was insulting, and 'plainly' it was fighting. It therefore is within the reach of the ordinance. . . . The ordinance, moreover, poses no significant threat to protected speech" (emphasis added). *Lewis* v. *New Orleans,* 415 U. S. 130, 141 (1974) (Blackmun, J., dissenting). "*Chaplinsky* is not limited to words whose

teenth Amendments must be taken to disable the States from punishing public utterance of . . . unseemly expletive[s] in order to maintain what they regard as a suitable level of discourse within the body politic." *Cohen v. California*, 403 U. S. 15, 23 (1971). In the words of the court, it is to be observed that "one man's vulgarity is another's lyric" (*id.* at 25), and the State may not, consistent with the First Amendment, make any single "four-letter expletive" a criminal offense[9] (*id.* at 26). Thus "so long as the means are peaceful, the communication need not meet standards of acceptability." *Organization for a Better Austin* v. *Keefe*, 402 U. S. 415, 419 (1971). And the means are presumed peaceful unless the words used constitute fighting words.

The Supreme Court, perhaps because of the inherent definitional difficulty involved, and, unlike the methodology of the obscenity cases, has articulated neither a per se standard nor any specific example of fighting words. However, certain cases do provide some insight as to the

---

mere utterance entails a high probability of an outbreak of physical violence. It also extends to the willful use of scurrilous language *calculated to offend the sensibilities of an unwilling audience*" (emphasis added). *Rosenfeld* v. *New Jersey*, 408 U. S. at 905 (Powell, J., dissenting). "I would not deny to these States the power to punish language of the sort used here by appropriate legislation. Appellant Lewis' words to the police officers were 'fighting words,' and those of appellants Rosenfeld and Brown were *'lewd and obscene'* and *'profane'* as those terms are used in *Chaplinsky* v. *New Hampshire*, 315 U. S. 568 (1942)" (emphasis added). *Rosenfeld* v. *New Jersey*, 408 U. S. at 911 (Rehnquist, J., dissenting). See the dissenting opinions in *Cohen* v. *California*, 403 U. S. 15 (1971); *Gooding* v. *Wilson*, 405 U. S. 518 (1972); *Lucas* v. *Arkansas*, 416 U. S. 919 (1974).

[9] Furthermore, the Supreme Court has held that "the mere presumed presence of unwitting listeners or viewers does not serve automatically to justify curtailing all speech capable of giving offense. See, e.g., *Organization for a Better Austin* v. *Keefe*, 402 U. S. 415 (1971). While this court has recognized that government may properly act in many situations to prohibit intrusion into the privacy of the home of unwelcome views and ideas which cannot be totally banned from the public dialogue, e.g., *Rowan* v. *Post Office Dept.*, 397 U. S. 728 (1970), we have at the same time consistently stressed

minimum requirements that an offensive speech statute must meet in order to ensure that the statute is limited to fighting words and thus reaches only speech not protected by the First Amendment. Fighting words as referred to in the relevant constitutional decisions are limited to "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky* v. *New Hampshire*, 315 U. S. at 572 (1942). The words must be "personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Cohen* v. *California*, 403 U. S. 15, 20 (1971). In order to be personally abusive the words must be "directed to the person of the hearer" in the sense that they are a face to face personal insult. *Cantwell* v. *Connecticut*, 310 U. S. 296, 309 (1940). Finally, the determination of whether words are personally abusive may not rest on subjective perceptions since an "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker* v. *Des Moines Independent Community Sch. Dist.* 393 U. S. 503, 508 (1969).

In the court's opinion, the § 53 disorderly person offense clearly does not fall exclusively within and is broader than this narrow definition of fighting words. Both the statutory crime of being a disorderly person as it has existed for centuries[10] and our authoritative con-

---

that 'we are often "captives" outside the sanctuary of the home and subject to objectionable speech.' *Id.*, at 738." *Cohen* v. *California*, 403 U. S. at 21. Compare in an analogous context *Erznoznik* v. *Jacksonville*, 422 U. S. 205 (1975), invalidating an ordinance declaring it unlawful for a drive-in motion picture theatre to exhibit films containing nudity where the screen was visible from a public street or place.

[10] General Laws c. 272, § 53, and its predecessor statutes, have for over 200 years been construed to apply to vulgar or profane speech, as well as fighting words. As far back as 1860, the offense of being a disorderly person included proof of the use of profane language. In the case of *Commonwealth* v. *Murray*, 14 Gray 397 (1860), the

struction thereof, specifically Am. Law Inst., Model Penal Code, § 250.2 (Proposed Official Draft, 1962), as adopted in *Alegata* v. *Commonwealth*, 353 Mass. 287, 302-304 (1967), encompass more than fighting words.[11] Therefore, we are compelled to conclude that the disorderly person provision in so far as it relates to speech and expressive conduct is unconstitutionally overbroad as "susceptible of application to protected expression." *Gooding* v. *Wilson*, 405 U. S. 518, 523 (1972).[12]

---

defense raised was that the use of profane language has no tendency to show that the defendant was an idle or disorderly person. The full decision of the court is reported thus: "Evidence of the habitual use of profane language is evidence of disorderly conduct. Profaneness is a violation of law, and contrary to the good order of society." *Id.* at 398. For a history of the offense of being an "idle and disorderly person," see *Commonwealth* v. *Diamond*, 248 Mass. 511 (1924). While there have been legislative revisions of § 53, the nature of these revisions has been to strike such designations as "Rogues and vagabonds, persons who use any juggling or unlawful games or plays, common pipers and fiddlers." St. 1943, c. 377. Otherwise, § 53 with additions reads in substance as it did in colonial times.

[11] See commentary to Model Penal Code, § 250.1 (Tent. draft No. 13, 1961) (the predecessor to § 250.2). The commentary expressly provides: "[C]oarse or indecent language is penalized under clause (b) *regardless* of any actual or presumed tendency to evoke disorder among the hearers, since the interest . . . [Model Penal Code, § 250.2 (b)] seek[s] to protect is freedom from present nuisance rather than freedom from anticipated violence" (emphasis added).

Additional statements of this intent appear throughout the commentary, "Clause (b) of Subsection (1) extends beyond acts creating physical discomfort inasmuch as it includes coarse or indecent utterances and abusive language. Such behavior on a street or in a public conveyance constitutes an assault on public sensibilities." See *Rosenfeld* v. *New Jersey*, 408 U. S. 901, 906 (1972) (Powell, J., dissenting).

[12] In this regard we agree with the Supreme Court of Alaska which in *Marks* v. *Anchorage*, 500 P. 2d 644 (Alaska, 1972), considered a disorderly person ordinance patterned on Model Penal Code, § 250.2, an ordinance which tracked verbatim the sections quoted by this court in the *Alegata* case with respect to § 53, and found it overbroad. However, that court primarily based its finding of total invalidity on the ground that the ordinance was void for vagueness. As will be seen, we disagree with that judgment. We believe that § 250.2 is not unconstitutionally vague as related to nonexpressive conduct and to that extent we reaffirm our holding in *Alegata*.

We reach this conclusion because our statute could indisputably be found susceptible of application to the type of speech and expressive conduct found protected in such cases as *Cohen* v. *California, supra, Gooding* v. *Wilson, supra, Rosenfeld* v. *New Jersey, supra,* and *Lewis* v. *New Orleans,* 408 U. S. 913 (1972). Indeed, virtually every definitional word in this court's limiting construction has been found lacking in the requisite specificity to survive a challenge on First Amendment overbreadth grounds. These words include "public inconvenience, annoyance or alarm" (*Coates* v. *Cincinnati,* 402 U. S. 611 [1971]); "offensively coarse utterance" (*Cohen* v. *California,* 403 U. S. 15 [1971]); and "abusive language" (*Gooding* v. *Wilson,* 405 U. S. 518 [1972]).

The United States Supreme Court has recognized in its decisions that the State has a valid interest in regulating certain types of speech, but it has also made clear that this end may not be achieved by a statute with as broad a potential sweep as the disorderly person provision of § 53. As Mr. Justice Harlan has stated in *Cohen* v. *California,* 403 U. S. 15 (1971), a case involving offensive speech, "[t]he ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is . . . dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner. Any broader view of this authority would effectively empower a majority to silence dissidents simply as a matter of personal predilections." *Id.* at 21. . "That the air may at times seemed filled with verbal cacophony is, in this sense, not a sign of weakness but of strength." *Id.* at 25. See *Abrams* v. *United States,* 250 U. S. 616, 630-631 (1919) (Holmes, J., dissenting); *Terminiello* v. *Chicago,* 337 U. S. 1, 4 (1949).

The question remains, however, whether despite our finding that the definition of a disorderly person adopted in *Alegata* v. *Commonwealth,* 353 Mass. 287 (1967), is constitutionally untenable in so far as it reaches protected

speech, we should further attempt to refine and narrow that definition. It is clear that the doctrine of "[f]acial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick* v. *Oklahoma,* 413 U. S. 601, 613 (1973). *Cox* v. *New Hampshire,* 312 U. S. 569, 575-576 (1941).

Given the historical background of the offense of being a disorderly person, it would not be sufficient for this court without more simply to construe the phrase "idle and disorderly persons," or the terms "makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present" as limited to fighting words, since such terms "plainly . . . [have] a broader sweep than the constitutional definition of 'fighting words' announced in *Chaplinsky* v. *New Hampshire,* 315 U. S. 568, 572 (1942), and reaffirmed in *Gooding* v. *Wilson* [, 405 U. S. 518 (1972)]." *Lewis* v. *New Orleans,* 415 U. S. 130, 132 (1974).[13] We do not perceive that § 53 was ever limited to fighting words,[14] nor do we deem it proper for this

---

[13] The *Lewis* case supports this position and is particularly interesting because in that case the conviction for the use of offensive speech was initially reversed and remanded by the United States Supreme Court. See 408 U. S. 913 (1972). Then the Louisiana Supreme Court, in accordance with the remand, reconsidered the ordinance pursuant to which the conviction had been obtained. That ordinance provided, "It shall be unlawful and a breach of the peace for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty," quoted in 415 U. S. at 132.

On remand the Louisiana Supreme Court held that the ordinance as written, "is narrowed to 'fighting words' uttered to specific persons at a specific time . . . .. *Id.,* at 826," as quoted in 415 U. S. at 132. However, the Supreme Court did not accept the State Supreme Court's limitation to "fighting words." That court again reversed (415 U. S. 130 [1974]), concluding that the State court had not sufficiently refined and narrowed the words of the ordinance.

[14] See n. 8, *supra.*

court to seek to infer from the simple words "idle and disorderly persons" under what circumstances and precisely how and subject to what penalties the Legislature would seek to regulate speech as fighting words "inherently likely to provoke violent reaction." *Cohen* v. *California*, 403 U. S. 15, 20 (1971). As Justice Qua stated in *Commonwealth* v. *Isenstadt*, 318 Mass. 543, 548 (1945), this court is under a duty "to avoid judicial legislation in the guise of new constructions to meet real or supposed new popular viewpoints, preserving always to the Legislature alone its proper prerogative of adjusting the statutes to changed conditions." Cf. *Commonwealth* v. *Horton*, 365 Mass. 164 (1974). For us to seek to construct from the phrase "idle and disorderly persons" an entirely new scheme for proscribing certain kinds of words would be the judicial legislating against which Justice Qua warned. This we decline to do.

3. *The Vagueness Issue.*[15] From the decision in *Alegata* v. *Commonwealth*, 353 Mass. 287 (1967), it may be inferred that the statutory phrase "idle and disorderly persons" in the absence of this court's authoritative construction would be unconstitutionally vague. However, as we said in *Alegata*, "Interpreting the statute, as we do, as embracing conduct of this sort [in accordance

---

[15] Admittedly the void for vagueness doctrine often overlaps in effect the overbreadth doctrine. See n. 4. Nevertheless, ultimately the methodology of the two analyses is distinguishable; that is to say, a statute may be vague even though it is so narrowly drawn as to avoid overbreadth dangers. We have determined that § 53, applied exclusively to conduct as defined by this court in prior decisions and herein, is not overbroad. Thus, the issue we next turn to is whether the disorderly person provision is vague. In short, the vagueness doctrine ensures that a statute be drawn with the requisite clarity so that a person has sufficient notice of what conduct on his part may be criminal. In addition, it ensures that no statute have such a "standardless sweep" as to allow discriminate enforcement. *Smith* v. *Goguen*, 415 U. S. 566, 575 (1974). For a discussion of the vagueness doctrine, see cases cited in *Grayned* v. *Rockford*, 408 U. S. 104, 108-109 (1972). See note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67 (1960).

with § 205.2], it aims at activities which intentionally tend to disturb the public tranquility, or alarm or provoke others. . . . So interpreted *the statute charges an offence which is not void for vagueness*" (emphasis added). *Id.* at 304.

Nevertheless, the defendant argues here that. the prefatory language of Am. Law Inst., Model Penal Code, § 250.2 (Proposed Official Draft, 1962), which is the basis of our narrowing construction, is itself unconstitutionally vague. That preface provides, "A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," he engages in the conduct set forth in subsections (a) and (c). The defendant points out that certain of the words used in the preface, i.e., inconvenience and annoyance, have been found vague in other cases. However, as the Commonwealth reasons, those words do not stand alone but are rather to be considered in reference to the specific conduct set forth in subsections (a) and (c).[16] As we stated in the *Alegata* case, the preface merely defines the requisite intent to commit a criminal act; the specific offenses are delineated in subsections (a) and (c) which relate to conduct.[17] These sections provide: "(a) engages in fighting or threatening, or in violent or tumultuous behavior; or . . . (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." So construed, the type of conduct which the disorderly person provision of § 53 reaches is that conduct which by

---

[16] As discussed above, we find subsection (b) unconstitutionally overbroad and therefore we need not reach the vagueness question with respect to that portion.

[17] We note that the statute at issue in *Colten* v. *Kentucky*, 407 U. S. 104 (1972), had the same preface as § 250.2 with the crime therein being defined as ". . . [congregating] with other persons in a public place and . . . [refusing] to comply with a lawful order of the police to disperse," as quoted in 407 U. S. at 108. That statute was upheld against an attack for vagueness.

its very nature involves the use of physical force or violence or any threat to use such force or violence if that threat is objectively possible of immediate execution. Cf. *Commonwealth* v. *Tarrant,* 367 Mass. 411 (1975); *Commonwealth* v. *Delgado,* 367 Mass. 432 (1975). Also covered is "tumultuous behavior," which, while perhaps not physically violent, may nevertheless be characterized as involving riotous commotion and excessively unreasonable noise so as to constitute a public nuisance. Conduct which creates a condition of physical menace to others is also reached, examples of which as described in the Am. Law Inst., Model Penal Code (Tent. draft No. 13, 1961) commentary would be the throwing of "'stink bombs', the strewing of garbage, nails, or other noxious substances in public passageways, turning off the lights in a theatre," and like conduct creating a hazard to the public safety.

On this basis we reaffirm our holding in *Alegata* v. *Commonwealth, supra,* that the disorderly person provision of § 53, as authoritatively construed by this court, is "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties" (*Connally* v. *General Constr. Co.* 269 U. S. 385, 391 [1926]), and is therefore not void for vagueness.[18] Accordingly, we believe that the § 53 disorderly person provision may be validly applied to conduct as defined in the *Alegata* case and herein.

However, in order to ensure that the statute as limited not be susceptible of application to conduct which is expressive and therefore protected by the First Amendment, we further construe the section to relate exclusively to activities which involve no lawful exercise of a First Amendment right. In this regard the intent to cause, or reckless disregard of, public inconvenience, annoyance, or

---

[18] As noted previously our result represents a departure from the reasoning in *Marks* v. *Anchorage,* 500 P. 2d 644 (Alaska 1972), the statute thus held void on its face. See n. 12, *supra.*

alarm must be assessed in terms of whether the conduct was engaged in with intent to exercise a First Amendment right and whether the interest to be advanced is insignificant in comparison to the inconvenience, annoyance, or alarm caused. Cf. *Colten* v. *Kentucky*, 407 U. S. 104, 109, 111 (1972).

We take this opportunity to observe that, despite our finding that the § 53 offense of being an idle and disorderly person is not void for vagueness, other parts of the statute are constitutionally suspect. The statute is archaic. In its laconic provisions it covers a multitude of crimes, some of which are completely alien to modern times, others of which may in the future be subject to the type of challenges raised here. Indeed, c. 272, § 53, is the mirror image of the city ordinance found void on its face in *Papachristou* v. *Jacksonville*, 405 U. S. 156 (1972). The ordinance in *Papachristou* is quoted in 405 U. S. at 156-157. Compare G. L. c. 272, § 53, set out in full in n. 1, *supra*.

The ordinance in *Papachristou* was found facially void for vagueness "both in the sense that it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' *United States* v. *Harriss*, 347 U. S. 612, 617 [1954], and because it encourages arbitrary and erratic arrests and convictions. *Thornhill* v. *Alabama*, 310 U. S. 88 [1940]. *Herndon* v. *Lowry*, 301 U. S. 242 [1937]," quoted in 405 U. S. at 162. In the absence of our limiting constructions thereof, the same could be said of § 53 in its entirety.

In a series of cases we have attempted to save by judicial construction the bare bones of § 53. See, e.g., *Alegata* v. *Commonwealth*, 353 Mass. 287 (1967) (idle and disorderly person); *Thomas* v. *Commonwealth*, 355 Mass. 203 (1969) (night walker); *Commonwealth* v. *Jarrett*, 359 Mass. 491 (1971) (disturbers of the peace); *Commonwealth* v. *Brasher*, 359 Mass. 550 (1971) (stubborn children). However, at some point the

foundation of the statute may be insufficient to support the weight of added judicial construction on judicial construction.

4. To summarize, we hold that the idle and disorderly person provision of § 53 as it presently stands cannot be validly applied against persons for the use of offensive and abusive language. However, the provision as construed by this court in *Alegata* v. *Commonwealth,* 353 Mass. 287 (1967), and as construed in the instant case, may validly be applied to conduct which involves no lawful exercise of a First Amendment right.

As to the questions reported, the first question is answered in the affirmative; the motion to dismiss should be granted since the adjudication of delinquency challenged may have been based on the speech involved. The second question is answered by the analysis of the statute in this opinion; the standards to be applied are as defined in this decision.

*So ordered.*