UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-1949
ABIODUN ABRAHAM and HENRY AJAO,

Plaintiffs, Appellees,
v.

JOSEPH NAGLE,
Defendant, Appellant.


No. 96-2008

ABIODUN ABRAHAM and HENRY AJAO,
Plaintiffs, Appellants,

v.
JOSEPH NAGLE, ET AL.,

Defendants, Appellees.


PERRY ROY, ET AL.,
Defendants, Appellees.


APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Nancy J. Gertner, U.S. District Judge] 


Before

Torruella, Chief Judge, 
Boudin and Lynch, Circuit Judges. 



Susan M. Weise, Chief of Litigation, City of Boston Law 
Department, with whom Merita A. Hopkins, Corporation Counsel, was on 
brief for defendants.
George C. Deptula, with whom George C. Deptula, P.C. was on 
consolidated brief for plaintiffs.



June 9, 1997


BOUDIN, Circuit Judge. Abiodun Abraham and Henry Ajao 

sued several police officers and the City of Boston for false

arrest and for other alleged wrongs. During trial, the

district judge directed a verdict in favor of Ajao on his

false arrest claim against the defendant officer Joseph

Nagle; the jury found in favor of the defendants on all other

claims. Before us are cross-appeals by the plaintiffs and by

Nagle.

Our main concern is with the directed verdict and, for

that purpose alone, we set forth the evidence in the light

most favorable to Nagle. Fashion House, Inc. v. K mart 

Corp., 892 F.2d 1076, 1088 (1st Cir. 1989). On August 18, 

1990, at about 11 p.m., the plaintiffs, both black immigrants

from Nigeria, arrived with three white women at the Venus de

Milo nightclub in Boston. After waiting in line for several

minutes, the group reached the club entrance. The three

women were admitted, but the plaintiffs were not.

The bouncer told Abraham that he could not enter the

club because he was wearing jeans and because Abraham and

Ajao were "a little intoxicated." The plaintiffs said that

other people wearing jeans were being admitted and that the

real reason for excluding them was their race. When Abraham

continued to protest, a club employee summoned Nagle, a

Boston police officer who was "on detail" at another

establishment down the block.

-2- -2-

Nagle talked with the plaintiffs for 15 to 20 minutes,

telling them that the club was not going to admit them and

that they should leave; he says that the plaintiffs never

told him of the alleged discrimination. During the

discussion, Abraham became increasingly agitated, continued

to protest loudly, and at one point hit or pushed Nagle in

the chest. Nagle then arrested Abraham for assault and

battery on a police officer.

Nagle sought to handcuff Abraham but the latter

struggled free. Nagle radioed for help and was soon joined

by officer Thomas Boyle. Together, Nagle and Boyle

handcuffed Abraham and tried to bring him to Boyle's cruiser,

which was double-parked in the street. Abraham resisted by

going limp. As Nagle and Boyle sought to move Abraham to the

car, Ajao circled the officers and yelled, "why are you doing

this to my friend," "this isn't South Africa, you're white

racist cops."

According to Boyle, Ajao was "trying to prevent us from

getting to the police car." At one point Boyle said that he

"had to actually push [Ajao] out of my way" as the officers

wrestled with Abraham. Several times the officers told Ajao

to "get away." Eventually, with Ajao still present, the

officers pushed Abraham into the back seat of the car; he

then prevented the door from closing by kicking at it, but

-3- -3-

the officers forced it closed. By this time a crowd of 20 or

so had gathered to watch.

In the meantime, as Abraham continued to yell from the

cruiser, Ajao circled it and came up behind the left rear

quarter of the car. Ajao was told: "Police, leave, get away

from the cruiser"; Nagle later testified that he had feared

that Ajao might try to open the car door and release Abraham.

Ajao failed to move. Nagle then arrested Ajao, who in turn

struggled with Nagle, Boyle and a third officer, once kicking

Nagle in the mid-section, before being restrained.

In due course, Abraham and Ajao were both charged with

assault and battery and disorderly conduct. Mass. Gen. Laws

ch. 265, 13D; id. ch. 272, 53. They were tried in state 

court in November 1990 and acquitted. In February 1993, they

in turn brought suit in state court against Nagle and other

police officers, and the city, charging the defendants with

false arrest under 42 U.S.C. 1983 and state law and with

various other wrongs.1 The defendants removed the action to

federal court and, following discovery, trial began in March

1995.

After all of the evidence was taken, the district court

granted Ajao's motion for a directed verdict in his favor

 

1The other claims, some of which were dropped prior to
or during trial, charged the defendants with false
imprisonment, racial discrimination, violation of free speech
rights, assault and battery, and use of excessive force.

-4- -4-

against Nagle, see Fed. R. Civ. P. 50(a); in an oral ruling, 

the trial judge declared that Nagle was liable under both

federal and state law for falsely arresting Ajao in violation

of the latter's First and Fourth Amendment rights. The

court's primary rationale, as we read the transcript, was

that (in the district judge's view) Ajao's conduct prior to

his arrest did not "rise to the level of disorderly conduct .

. . ." The balance of the case was submitted to the jury.

By responses to special interrogatories, the jury fixed

Ajao's damages at $8,500 to vindicate his "rights against

false arrest," but made no separate award for violation of

free speech rights. On all of the plaintiffs' remaining

claims, the jury found against the plaintiffs and in favor of

the defendants. Thereafter, the district court awarded Ajao

attorney's fees of $24,858.50. Nagle now appeals from the

directed verdict against him. The plaintiffs also appeal,

urging that they are entitled to a new trial on their

unsuccessful claims, to an injunction, and to increased

attorney's fees. We begin with Nagle's appeal.

On review of a directed verdict, we take the evidence

most favorably to the losing party and ask de novo whether a 

reasonable jury had inevitably to decide in favor of the

victor. Smith v. F.W. Morse & Co., 76 F.3d 413, 425 (1st 

Cir. 1996). Here, putting aside some loose ends, the central

question is whether Nagle at the time of the arrest had

-5- -5-

probable cause to believe that Ajao had committed the offense

of disorderly conduct. If so, this largely defeats the false

arrest claim under both federal and state law. Logue v. 

Dore, 103 F.3d 1040, 1044 (1st Cir. 1997); see Commonwealth 

v. Grise, 496 N.E.2d 162, 163 (Mass. 1986). 

Of course, it would be much easier to conclude that

Nagle, on his own version of events, had probable cause to

charge Ajao with assault and battery: Nagle said that Ajao

kicked him. But the kick occurred after Ajao's arrest; prior 

to the arrest, the only pertinent charge was disorderly

conduct. We reserve for another day various issues that

would arise if the original arrest were unjustified but

resistance to it provided grounds for a valid charge.

Compare Groman v. Township of Manalapan, 47 F.3d 628, 635 (3d 

Cir. 1995), with United States v. Dawdy, 46 F.3d 1427, 1430- 

31 (8th Cir.), cert. denied, 116 S. Ct. 195 (1995). 

In defining disorderly conduct, Mass. Gen. Laws ch. 272,

53 provides for the punishment, inter alia, of "idle and 

disorderly persons." In 1967, the Supreme Judicial Court

rejected a challenge that this provision was

unconstitutionally vague by interpreting it to incorporate

the Model Penal Code's definition of disorderly conduct.

Alegata v. Commonwealth, 231 N.E.2d 201, 211 (Mass. 1967). 

That definition states:

A person is guilty of disorderly conduct if, with
purpose to cause public inconvenience, annoyance or

-6- -6-

alarm, or recklessly creating a risk thereof, he:
(a) engages in fighting or threatening, or in
violent or tumultuous behavior; or (b) makes
unreasonable noise or offensively coarse utterance,
gesture or display, or addresses abusive language
to any person present, or (c) creates a hazardous
or physically offensive condition by any act which
serves no legitimate purpose of the actor.

Id. (quoting ALI, Model Penal Code 250.2 (Proposed Official 

Draft 1962)).

Several years later, the Supreme Judicial Court struck

down subsection (b) of this definition as unconstitutionally

overbroad. Commonwealth v. A Juvenile, 334 N.E.2d 617, 622 

(Mass. 1975). And to avoid First Amendment concerns, the court

ruled that the remaining subsections (a) and (c) must be

construed to cover only conduct, not activities which involve the

"lawful exercise of a First Amendment right." Id. at 628; see 

also Commonwealth v. LePore, 666 N.E.2d 152, 155 (Mass. App. Ct.) 

("To be disorderly within the sense of the statute, the conduct

must disturb through acts other than speech . . . ."), review 

denied, 668 N.E.2d 356 (Mass. 1996). 

Nagle testified that he arrested Ajao under subsection

(c), not subsection (a), and we doubt that Ajao's conduct prior 

to his arrest would support a charge under subsection (a). Thus,

the question for us is whether a reasonable jury could have found

that Nagle had probable cause to believe that Ajao had violated

subsection (c) by "creat[ing] a hazardous . . . condition by any

act which serves no legitimate purpose of the actor." We think

-7- -7-

that a reasonable jury, if it accepted the defense version of

events, could have so found.

An arrest of a struggling defendant--here, Abraham--is a

serious business. Even without a gathering crowd and traffic

blocked by a police cruiser, there is a potential for serious

violence and of injury both to the suspect and to the police.

Yet, assuming the truth of the defense evidence, Ajao--despite

repeated requests to get out of the way--circled the officers

while shouting, at least once got directly in their way, and then

refused to move away from the cruiser.

Such behavior can fairly be taken to fall directly within

the literal language of subsection (c): creating "a hazardous . .

. condition" by acts "which serve[] no legitimate purpose of the

actor." Indeed, a number of Massachusetts cases have upheld

disorderly conduct arrests where a refusal to obey police orders

created a safety threat. See Commonwealth v. Mulero, 650 N.E.2d 

360, 363 (Mass. App. Ct.), review denied, 652 N.E.2d 145 (Mass. 

1995); Commonwealth v. Bosk, 556 N.E.2d 1055, 1058 (Mass. App. 

Ct. 1990); Commonwealth v. Carson, 411 N.E.2d 1337, 1338 (Mass. 

App. Ct. 1980). 

Literal language is not the full story. The state's

highest court has glossed the statute not to apply wherever the

activities are themselves the "lawful exercise of a First

Amendment right." A Juvenile, 334 N.E.2d at 628. And Ajao had a 

free-speech right to protest the arrest of his companion, even if

-8- -8-

this distressed or annoyed the police. But by the same token,

"the mere fact that the conduct of the defendant was accompanied

by speech does not preclude a conviction" under the disorderly

conduct law. Carson, 411 N.E.2d at 1337.  

We have very little difficulty in separating Ajao's

protected speech from his physical interference with two

policemen struggling to arrest and detain a third person, which

is not protected. Indeed, in Colten v. Kentucky, 407 U.S. 104, 

109 (1972), the Supreme Court upheld a conviction for far less

disruptive conduct, observing that "Colten's conduct in refusing

to move on after being directed to do so" was not protect by the

First Amendment. See also City of Houston v. Hill, 482 U.S. 451, 

463 n.11 (1987).

In some cases, peaceful demonstration and protected

expression may appear to merge. Possibly, this may explain

Commonwealth v. Feigenbaum, 536 N.E.2d 325, 328 (Mass. 1989), 

where the state court held that the disorderly conduct statute

did not extend to the blocking of traffic in the course of a

peaceful political rally because the defendant's purpose was

legitimate. But Ajao's alleged conduct in the present case--

disrupting a police attempt to arrest a struggling companion--

seems to us both more dangerous and less legitimate.

-9- -9-

Further, even if Feigenbaum were given its most extreme 

reading,2 making a good purpose a complete defense, it would be

up to a jury to determine whether Ajao was acting to express

protected speech or whether he also sought to interfere with the

arrest. The latter aim could not be a legitimate purpose on any

view of the matter. Yet a jury could infer, assuming it accepted

the defense version of events, that Ajao was trying to frustrate

the arrest by getting in the way or distracting the officers and

not simply trying to convey his objections.

In this case, the jury certainly did not have to accept

the police version of the events. The plaintiffs gave a more

benign account of their conduct and there were some

contradictions in the defendants' own testimony. But it was the

jury's province, after observing Nagle, the other officers, and

the plaintiffs on the witness stand to decide whom the jurors

believed. We simply disagree with the trial judge's conclusion

that she was free to make that credibility determination. If the

district judge thought that the credibility issues fell within

her province, this was a mistaken view of the governing rule.

See Smith, 76 F.3d at 425.3 

 

2At least two state court decisions after Feigenbaum 
suggest that an extreme reading is unwarranted and that a
defendant can be liable for disorderly conduct even where his
main objective is to protest police decisions. See Mulero, 
650 N.E.2d at 363; Bosk, 556 N.E.2d at 1058. 

3Nagle points to the trial judge's comment (made in
discussing jury instructions) that "I am basing my findings
with respect to Mr. Ajao on my evaluations of the credibility

-10- -10-

Three loose ends remain. One is the possibility that an

arrest based on probable cause might still be unlawful if the

police officer acted simply for the purpose of punishing

protected speech. There is some law on this subject, compare 

Whren v. United States, 116 S. Ct. 1769, 1774 (1996), with Sloman 

v. Tadlock, 21 F.3d 1462, 1469 (9th Cir. 1994), but we need not 

pursue the issue here. Plaintiffs have not pointed to any direct

evidence that Nagle acted out of an improper motive to suppress

speech, and certainly nothing would remotely justify deciding

that issue against him by a directed verdict.

The second is the possibility, on remand, of a qualified

immunity defense for Nagle. This defense, preserved in the

district court, has been successfully invoked in this circuit

where a police officer made a reasonable, if arguably mistaken,

call on a close legal issue. E.g., Joyce v. Town of Tewksbury, 

112 F.3d 19 (1st Cir. 1997); Veilleux v. Perschau, 101 F.3d 1, 3 

(1st Cir. 1996). We have ignored the issue here only because the

city has chosen, for reasons not explained, to fight this appeal

on the merits.

Third, for the sake of completeness, we note that in 1995-

-well after the incident in this case--Massachusetts enacted a

separate "resisting arrest" statute that also covers situations

in which the person charged prevented or attempted to prevent the

 

of the witnesses as well as my evaluations of the sufficiency
of the evidence . . . ." 

-11- -11-

arrest of another. Mass. Gen. Laws ch. 268, 32B. We need not

consider whether Ajao could have been charged under this statute,

which is narrower in focus but more severe in penalties than the

disorderly conduct statute applied here. There is no indication

that the adoption of the new statute was meant to eliminate or

alter the availability of the disorderly conduct law as a less

severe remedy for addressing disorderly interference with police

activity.

Turning now to the plaintiffs' appeal, we begin with their

claim that the district court erred in denying them a new trial

on their other claims which were rejected by the jury. The

arguments are largely conventional ones turning on the weight of

the evidence, the propriety of closing arguments, and possible

confusion on the part of the jury evidenced by an inquiry made by

the jury during its deliberations.

The denial of a new trial motion under Fed R. Civ. P. 59

is reviewed for abuse of discretion. Bogosian v. Mercedes-Benz 

of North America, Inc., 104 F.3d 472, 482 (1st Cir. 1997). 

Without describing the plaintiffs' arguments in detail, we find

no abuse here in rejecting each of the new-trial grounds thus far

mentioned. A potentially more serious claim is that the jury

pool may have excluded minorities, but the plaintiffs have

pointed to nothing in the record to support the charge or to show

that it was even raised in the trial court.

-12- -12-

The plaintiffs also object to the district court's failure

to grant injunctive relief. The relief sought was to prevent the

Boston police from continuing to use, at least without revision,

a training bulletin that sets forth the Model Penal Code

definition of disorderly conduct but fails to indicate that

subsection (b) has been struck down by the Supreme Judicial

Court. The city, which has not responded on this point, would be

well advised to clarify the manual on its own.

But the plaintiffs were not charged under subsection (b);

in fact, Nagle testified that he had been taught that subsection

(b) had been held invalid. Nor did the plaintiffs show that they

faced any real threat of future injury, e.g., by threats to 

enforce subsection (b) against them in the future. City of Los 

Angeles v. Lyons, 461 U.S. 95, 102 (1983). The district court, 

exercising its equitable authority to grant or deny injunctive

relief, certainly did not have to grant any here.

To conclude, we vacate the judgment against Nagle on the 

false arrest claim and the now-mooted award of attorney's fees

against him and otherwise affirm the judgment entered on the jury 

verdicts in favor of the defendants. The false arrest claim is

remanded for further proceedings consistent with this opinion. 

It is so ordered. 

-13- -13-