## COMMONWEALTH vs. WILLIAM R. WRIGHT.

No. 03-P-875.

Middlesex. April 16, 2004. - September 9, 2004.

Present: ARMSTRONG, C.J., DREBEN, & KANTROWITZ, JJ.

*Eavesdropping. Electronic Surveillance. Statute,* Construction. *Evidence,* Relevancy and materiality.

Tape recorded evidence containing isolated words that were intelligible, but not an entire conversation, constituted a recording of a "wire or oral communication" within the meaning of G. L. c. 272, § 99, and thus supported the defendant's convictions of unlawful wiretapping and unlawful possession of a wiretapping device [792-794], and the judge's analysis of the sufficiency of the evidence was proper [794].

In a wiretapping case, the location of the video camera in question, its recording of sound, and the fact that the tape had captured voices on an earlier recording date warranted the jury's finding that the defendant had an intent to record speech, and not just visual images, on the charged date. [794]

No prejudice resulted in a wiretapping case from the judge's admitting evidence of the complaining witness's emotional state upon learning that her activities in the bathroom at her place of employment had been recorded. [795]

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on August 14, 2001.

A motion to dismiss was heard by *Severlin B. Singleton,* J., and the case was tried before *Phyllis J. Broker,* J.

*William R. Hill, Jr.,* Committee for Public Counsel Services, for the defendant.

*Jennifer M. Bombard (Heather E. Hall,* Assistant District Attorney, with her) for the Commonwealth.

DREBEN, J. While conceding that the video camera found in the bathroom/utility room of PIP Printing Co. (PIP) was his, the defendant claims that his motion for a required finding of not guilty on the charges of wiretapping and the unlawful possession of a wiretapping device was erroneously denied. He asserts

two reasons: (1) the tape recorded by the camera was unintelligible or at most contained only a few discernable words and hence was not a recording of any "wire or oral communication" within the meaning of G. L. c. 272, § 99; and (2) there is nothing to suggest that he had any intent to capture more than visual images.[1] He also argues that the judge committed reversible error in admitting, over objection, irrelevant and prejudicial matter, namely, evidence of the complaining witness's emotional state. We affirm the defendant's convictions of unlawful wiretapping (G. L. c. 272, § 99 C 1) and unlawful possession of a wiretapping device (G. L. c. 272, § 99 C 5).[2]

The evidence in the light most favorable to the Commonwealth was as follows. On August 8, 2001, a female PIP employee in whom the defendant had shown interest[3] discovered the video camera in the bathroom/utility room on top of a backpack. The camera was covered by a towel and only the lens was visible. When the employee first saw the camera she did not realize she was being recorded, but after sitting on the toilet she noticed the camera was running and removed the tape. Her complaint to PIP's owner elicited no action, and after thirty minutes she called 911. Within minutes, police officers arrived, questioned the defendant, and, after he admitted owning the camera and the backpack, he was arrested.

The bathroom/utility room was small and could hold one person comfortably at a time. It contained, in addition to a sink and toilet, a microwave, a water cooler with a mini-refrigerator, and a coat rack with hooks for employees to hang their belongings. The company had three full time employees (the defendant, another male employee, and the complaining witness) in addition to the owner. The layout of the premises and

---

[1]There is no express statutory prohibition against visual, as contrasted with sound, recordings. See, however, *Commonwealth* v. *LePore,* 40 Mass. App. Ct. 543, 548 (1996), holding that in the circumstances of that case (videotaping was not involved), G. L. c. 272, § 53, could be applied to a "Peeping Tom" activity.

[2]The defendant was originally also charged with possession of marijuana (continued without a finding) and with disturbing the peace (dismissed at the request of the Commonwealth).

[3]The defendant, who was PIP's assistant manager, and the complaining witness had socialized after hours about five or six times. She became uncomfortable with his attentions, found him too aggressive, and, beginning in the middle of July, did not want to see him socially.

the position of the camera was such that when the door of the bathroom/utility room was open, the video camera would, of necessity, visually record the back counter area of the office and record voices of employees present at that counter.

The tape, which was played to the jury, contained material from both August 8, 2001, the date of the charged offenses, and from a prior recording on August 1, 2001. While the jury could have found that the August 8 recording (to which we have listened) contained only snippets of voices and a few words, the August 1 recording contained intelligible conversations.[4]

1. *Sufficiency of evidence.* (a) *Comprehensibility of the tape.* In the absence of an express statutory exemption, G. L. c. 272, § 99,[5] "strictly prohibits the secret electronic recording by a private individual of any oral communication." *Commonwealth* v. *Hyde*, 434 Mass. 594, 595 (2001). The statute defines the term "interception" to include "to secretly record," G. L. c. 272, § 99 B 4, as amended by St. 1968, c. 738, § 1, and the term "oral communication" is defined as "speech, except such speech as is transmitted over the public air waves by radio or other similar device." *Id.* at § 99 B 2.

Speech is not further defined. Relying on footnote 11 of *Commonwealth* v. *Hyde*, 434 Mass. at 605, the defendant argues that his convictions were not warranted because the tape is virtually inaudible. The footnote arose in the following context. In discussing the dissent's comment that the maker of the Rod-

---

[4]At trial, the defendant's counsel did not object to the admission of the tape when it was offered in evidence, although at the conclusion of the evidence she pointed out that the tape contained four hours of material. She argued that only those portions which were played to the jury (the August 8 and August 1 portions) should have been admitted. On appeal, the defendant states in a footnote to his brief that the August 1 portion is irrelevant and points out that submission of the recordings of both days "might very well have confused the jurors." Even if these statements were considered to be proper argument, there was no error in the admission of the August 1 portion because, as the trial judge noted, it was relevant to show that the defendant's intent to record sound on August 8 could be inferred from his knowledge of the earlier recording.

[5]Section C 1 of G. L. c. 272, § 99, as amended by St. 1968, c. 738, § 1, provides in relevant part: "Except as otherwise specifically provided in this section any person who — willfully commits an interception . . . of any wire or oral communication shall be fined . . . or imprisoned."

ney King videotape would have been prosecuted in Massachusetts, the majority first pointed out that the California electronic surveillance statute differs from the Massachusetts statute because the former excludes "communication made in a public gathering," *id.* at 604, quoting from Cal. Penal Code § 632(a) (West 1999), while the Massachusetts statute is not limited to secret recordings. The court continued,

> "There is no basis to ignore the plain language and legislative history of G. L. c. 272, § 99, or our case law interpreting it, in favor of speculation as to how an imaginary scenario might have played out, had the Rodney King episode occurred in Massachusetts and not in California.[11]"

*Commonwealth* v. *Hyde*, 434 Mass. at 605. Footnote eleven states:

> "The dissent's presumption that Holliday [the maker of the Rodney King tape] would have been prosecuted, under Massachusetts law, for wilfully committing an interception of an oral communication, is unwarranted. Although the Rodney King videotape visually captured the conduct of the police officers' interaction with King, the recording was virtually inaudible, until electronic enhancements filtered the audio portion to allow the actual commands of the police officers to be heard."

*Id.* at 605 n.11.

While the defendant's interpretation of the footnote — that unless the tape is comprehensible, there is no violation of the wiretapping statute — is a reasonable one, we find it significant that the majority in *Hyde* considered it a matter of speculation whether the making of the Rodney King videotape was a violation of Massachusetts law. The extent to which a tape must be intelligible in order to find a violation of § 99 was not an issue before the Supreme Judicial Court. Thus, the footnote may be read to mean that there is a legal issue as to whether a conviction under § 99 is foreclosed when a tape is virtually inaudible.

We consider the judge's reading of the statute as set forth in her instructions to be correct and not precluded by the *Hyde*

footnote. In charging the jury, the judge stated that the Commonwealth must prove among other things:

> "that the defendant recorded an oral communication. The term oral communication is defined as speech except such speech as is transmitted over the public airwaves by radio or other similar device. *Speech is defined as words spoken audibly and comprehensibly, either in conversation or alone.*" (Emphasis supplied.)

In effect, the judge indicated, and we agree, that the conversation or communication need not be intelligible; it is enough if isolated words are intelligible.

We also consider the judge's analysis of the sufficiency of the evidence proper. After the defendant argued there was insufficient evidence for a conviction of the wiretapping charge, the judge again listened to the tape (out of the presence of the jury) and determined that certain words were audible and, hence, that sufficient evidence existed to warrant a jury to find that there were words that were audible and understandable.[6]

(b) *Intent to record speech.* In her instructions, the judge specifically stated:

> "It's not enough for the Commonwealth to establish the defendant intended to record visual images. In order to establish the defendant's guilt of this offense, the Commonwealth must establish beyond a reasonable doubt that the defendant possessed the intent to record oral communications or speech."

In view of the location of the video camera, its recording of sound and the fact that the tape had captured voices on the earlier August 1 recording, the jury were warranted in finding that the defendant had on August 8 an intent to record speech.[7] They were also warranted in finding the defendant guilty of possession of an intercepting device "under circumstances evincing an intent to commit an interception not permitted or authorized." G. L. c. 272, § 99 C 5, as amended by St. 1968, c. 738, § 1.

---

[6]As indicated earlier, we also listened to the tape, and we find no error in the judge's determination that there was enough evidence on the tape for the question of the comprehensibility of words or conversation to be given to the jury.

[7]The jury could find that the camera was positioned in the same place on both dates.

2. *Admission in evidence of complaining witness's demeanor.* Evidence that the complaining witness was upset at finding that her activities in the bathroom had been recorded was elicited, over objection, from the complaining witness herself and from a police officer who had arrived at PIP in response to her 911 call. At the time of her testimony, there was a question as to whether the judge would admit certain of her statements to the police as spontaneous utterances. Although the judge later refused to allow such statements in evidence, at the time of the witness's testimony, her emotional state was relevant. While the judge could have heard this evidence outside the presence of the jury, she was not required to do so. Moreover, as to the statements of both witnesses, the judge had considerable discretion to determine their relevancy to the complaining witness's credibility. Not only did the prosecution make no mention of this evidence in closing argument, but any juror would in all likelihood expect a person whose activities on the toilet were recorded to be upset. Even if it would have been preferable to exclude the evidence, there was here no prejudice.

*Judgments affirmed.*