COMMONWEALTH *VS.* JEFFREY MANZELLI.

No. 05-P-1041.

Suffolk. October 3, 2006. - April 18, 2007.

Present: GRASSO, BROWN, & TRAINOR, JJ.

*Evidence,* Wiretap, Tape recording. *Idle and Disorderly Person. Practice, Criminal,* Instructions to jury.

The evidence properly before the jury in a criminal case was sufficient to convict the defendant of unlawful electronic interception of an oral communication, G. L. c. 272, § 99, without the Commonwealth introducing an actual recording, the circumstantial character of the evidence notwithstanding. [692-695]

At a criminal trial, the evidence properly before the jury was sufficient to convict the defendant of being a disorderly person pursuant to G. L. c. 272, § 53, where nothing prevented the defendant from being tried on that charge for conduct undertaken after the decision to arrest the defendant for other criminal conduct was made. [695-696]

At the trial of a complaint charging disorderly conduct, there was no risk that the judge's instructions might have misled the jury regarding the "no legitimate purpose" element of that crime, and certainly none that rose to the level of a substantial risk of a miscarriage of justice [696-698]; likewise, the language the judge used did not improperly shift the burden of proof on that element to the defendant [698-700].

COMPLAINT received and sworn to in the Boston Municipal Court Department on September 30, 2002.

The case was tried before *Annette Forde,* J.

*David P. Russman* for the defendant.

*David S. Bradley,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted of unlawful electronic interception of an oral communication, G. L. c. 272, § 99, as amended by St. 1968, c. 738, § 1, and disorderly conduct, G. L. c. 272, § 53, as amended by St. 1943, c. 377. On appeal he alleges that (1) the evidence was legally insufficient as to both

charges, and (2) the judge's instructions on the elements of disorderly conduct were incorrect. We affirm.

*Facts.* Based on the evidence presented at trial, the jury could have found as follows: During a political rally, the defendant approached and photographed Massachusetts Bay Transportation Authority (MBTA) police Officers Brian Harer and Victoria Riel. Harer asked the defendant to stop taking pictures of the officers, but the defendant continued to do so. After a few minutes, the defendant walked away. Once the defendant left, MBTA inspector Charles Kenneally walked over to Harer and Riel to ask about the encounter.

Shortly thereafter, the defendant returned and asked Kenneally whether it was true that "officer badge number forty-six of the MBTA police department said that I can't take his picture and use it." Kenneally asked Harer whether he had told the defendant not to take his picture. As Harer turned to answer, he noticed that the defendant had a microphone tucked into the zippered front of his jacket. Harer asked the defendant if he was tape recording their conversation.

The defendant immediately took the microphone, along with a black bag containing a tape recorder and cassette tapes, and threw them among a nearby group of protestors. The defendant shouted for people to take the tapes. Riel attempted to retrieve the recorder and tapes, but was thwarted by the crowd, which began to throng Riel. Harer came to Riel's aid, and the two of them managed to recover an empty bag, the microphone, and a few tapes. Riel was punched in the eye by a protestor as she attempted to collect the items.

Harer then attempted to arrest the defendant, who, by that time, had fled into a nearby subway station. After a brief chase, Harer took the defendant into custody. As Harer placed the defendant under arrest, the defendant threw an audiotape into the crowd inside the station, striking a passerby in the head and causing her to fall down. Other evidence is included in our analysis as required.

1. *Sufficiency of evidence.* a. *Tape recording.* The defendant was charged with, inter alia, unlawful electronic interception of an oral communication, G. L. c. 272, § 99. Specifically, the

government alleged that the defendant had made[1] a secret recording of his conversations with Kenneally, Riel, and Harer as they conversed with the defendant outside the subway station. On appeal, the defendant argues that the government's proof was fatally deficient insofar as no actual recording was introduced at trial.[2]

In support of his claim, the defendant relies primarily on *Commonwealth* v. *Wright*, 61 Mass. App. Ct. 790 (2004), a case in which we considered whether the fact that the recording quality of an alleged unlawful interception was so poor as to render voices partially inaudible precluded conviction under § 99. We ultimately held that since the tape in question contained at least some audible words, it qualified as an interception under the statute. However, it is arguable that the *Wright* case stands for the proposition that where an audio recording contains *no* discernable voices whatsoever, it would not qualify as an intercepted communication under § 99.[3]

Even assuming that our decision in *Wright* would require acquittal in cases where an audiotape, *actually submitted in evidence*, was found to contain no intelligible words,[4] we do not believe that it follows therefrom that the government is required

[1]As noted below, the Commonwealth argued in the alternative that the defendant *attempted* to make an unlawful electronic interception of an oral communication, an act also forbidden by § 99, see note 8, *infra*.

[2]The defendant also alleges that the government's proof was legally insufficient insofar as there was no evidence of a *secret* recording, as required by § 99, and no evidence of any conversation that might have been the subject matter of an electronic interception. These arguments, at best, run to the weight and not the legal sufficiency of the government's evidence, and so require no detailed analysis. See *Commonwealth* v. *Vernazzarro*, 10 Mass. App. Ct. 897, 898 (1980). There was testimony that the microphone was tucked in the defendant's jacket and, in the words of Harer, "wasn't something you'd really notice." That was a sufficient basis from which to infer the requisite secrecy of the interception. Further, there was testimony that the officers spoke to the defendant and to each other at the time of the alleged recording. This conversation could have been recorded by the defendant. In short, there is no merit to these claims of legal insufficiency.

[3]We stated in *Wright*, *supra* at 793: "the defendant's interpretation of [*Commonwealth* v. *Hyde*, 434 Mass. 594, 605 n.11 (2001)] — that unless the tape is comprehensible, there is no violation of the wiretapping statute — is a reasonable one . . . ."

[4]This is merely consistent with the principle that in those rare cases where evidence admitted at a criminal trial so completely negated the government's

to produce a recording to obtain a conviction under § 99.[5] For most crimes, indirect or circumstantial evidence is generally sufficient to prove any or all of the elements of an offense. See *Commonwealth* v. *Grandison*, 433 Mass. 135, 140-141 (2001). Stated differently, provided a jury's verdict does not rest upon speculation or conjecture, the mere absence of direct evidence with respect to one or more elements of a crime by no means mandates a finding of legal insufficiency.[6] See, e.g., *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977). Here, we conclude that the government met its threshold burden of proof, even without an audiotape.

Despite the lack of a tape, there was ample circumstantial evidence that the defendant made an unlawful secret recording, including (1) his possession of a device, together with the microphone secreted in his jacket, (2) the fact that the microphone was pointed in the direction of the officers during their conversation with the defendant, (3) the odd manner in which the defendant put his questions to police,[7] and (4) the tapes he discarded into the crowd.

Further, the jury might have viewed the defendant's efforts to elude arrest (namely his retreat into the subway station), and to avoid having his recording equipment seized (by throwing it into the crowd) as evidence of his consciousness of guilt. See *Commonwealth* v. *Coonan*, 428 Mass. 823, 830 (1999) (attempts to destroy evidence reflect consciousness of guilt). While evidence of consciousness of guilt is never sufficient, standing alone, to support a conviction, it may be considered by the jury in combination with other inculpatory facts in determining

---

theory of liability such that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt, the government's proof may be deemed legally insufficient.

[5] In view of the fragility of sound recordings, it is easy to envision many circumstances in which, while the recording itself has been destroyed, other evidence of an unlawful interception, sufficient to support a conviction, might exist.

[6] In effect, the defendant seeks to equate the absence of direct inculpatory evidence as to a required element with the presence of direct *and* irrefutable exculpatory evidence with respect to some requisite element. That is simply not the law.

[7] As noted, the defendant spoke in an unusually loud voice and identified at least one officer by badge number.

whether the government has met its burden of proof. *Id.* at 830-831. See *Commonwealth* v. *Bush,* 427 Mass. 26, 30-31 (1998). We conclude that, on the basis of all of the evidence properly before the jury in this case, the Commonwealth's evidence was legally sufficient, its circumstantial character notwithstanding.[8]

b. *Disorderly conduct.* The defendant was also charged with being a disorderly person, G. L. c. 272, § 53. The defendant's argument implicitly concedes that the evidence that he threw an audiotape, hitting a passerby in the head, was properly before the jury; therefore, the government met its threshold burden of proof with respect to that charge. The defendant contends, however, that the jury should not have been permitted to consider that conduct as the basis for the charge because the conduct occurred after the police decided to arrest the defendant for violating § 53. We disagree.

Both the subjective intent of the police and the precise timeline of events here are not relevant to the question of legal sufficiency. Even assuming, for the sake of argument, that the defendant did not engage in disorderly conduct as defined in § 53 before the police decided to arrest him, this would not prevent him from being tried on that charge for conduct undertaken after the decision to arrest the defendant was made. We note that the defendant has pointed to no case law or authority to support such an argument. Viewing all of the evidence properly before the jury, we conclude that the Commonwealth's

---

[8]As the Commonwealth points out, § 99 also criminalizes the *attempted* interception of an oral communication, and this theory of culpability was presented to the jury here as an alternative to the theory that the defendant had, in fact, made a secret recording. The defendant does not seriously argue that the evidence was legally insufficient to support a conviction on an attempted interception theory. However, despite the Commonwealth's arguments to the contrary, even such a concession by the defendant would not end our inquiry. Since a general verdict was returned, the evidence must be sufficient as to *all* of the theories on which the case was submitted to the factfinder to avoid a retrial. See *Commonwealth* v. *Flynn,* 420 Mass. 810, 818 (1995); *Commonwealth* v. *Kickery,* 31 Mass. App. Ct. 720, 724 (1991). Where, as here, multiple theories of criminal liability are presented to a jury, the Commonwealth would be well advised to request a special verdict indicating the precise basis for any conviction to avoid potentially needless reversals.

proof on the disorderly conduct charge was legally sufficient.[9]

2. *Jury instructions on disorderly conduct.* With respect to the criminal complaint for disorderly conduct, G. L. c. 272, § 53, upon the express request of the defendant, the judge charged the jury as follows:

> "[F]irst, the Commonwealth must prove that the defendant involved himself in at least one of the following actions. One, he either engaged in fighting or threatening. Or two, he engaged in violent or tumultuous behavior. Or three, he created a hazardous or physically offensive condition by an act that served no legitimate purpose of the defendant's. [Second], the Commonwealth must prove beyond a reasonable doubt that the defendant's actions were reasonably likely to affect the public. [T]hird, the Commonwealth must prove beyond a reasonable doubt that the defendant either intended to cause public inconvenience, annoyance or alarm. *You have heard discussions of the defendant being a reporter and you need to know that he may not be convicted of disorderly conduct based solely on activities that are protected by the First Amendment. Therefore, you may not convict the defendant if his actions were based on legitimate news gathering activities.*" (Emphasis added).

The defendant now argues that the instruction was fatally flawed, creating a substantial risk of a miscarriage of justice. Specifically, the defendant argues that the judge's reference to "legitimate news gathering activities" improperly limited the judge's earlier reference to "legitimate purpose." Further, the defendant contends that the instruction contained improper language that shifted the burden of proof on this element to the defendant and thus violated his due process protections. We consider each claim in turn.

The defendant does not dispute that he requested an instruction, or that such an instruction was appropriate in the circumstances.[10] Rather, the defendant, for the first time on appeal, contends that the judge's reference to "legitimate news gathering

---

[9]We note that the defendant has made no claim here that his arrest was not lawfully based on probable cause. Such a claim would, in the circumstances, be meritless.

[10]As the Supreme Judicial Court determined in *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 587-599 (1975), and as we recently reaffirmed in *Com-*

activities" might have been misunderstood by the jury as limiting the judge's earlier reference in his instruction to "legitimate purpose" — that is, the judge's reference to the principle that the defendant could not be convicted of disorderly conduct on the theory that he created a "hazardous or physically offensive condition" unless his actions served no "legitimate purpose." See *Commonwealth* v. *Sholley*, 432 Mass. 721, 728 n.8 (2000), cert. denied, 532 U.S. 980 (2001) (proof of the absence of a "legitimate purpose" only required with respect to prosecutions undertaken on theory that defendant created "hazardous or physically offensive condition"). According to the defendant, the judge's instruction created the impression that the only "legitimate purpose" the jury could consider for this purpose was "legitimate news gathering activities."

As always, in determining whether a jury instruction is defective, we view the charge in its entirety and consider how it likely would have been interpreted by a reasonable juror in the over-all context of the instructions. See *Commonwealth* v. *Oliveira*, 445 Mass. 837, 844 (2006). Pursuing that form of analysis here, we conclude that there is no risk that the jury might have been misled. Our determination in that regard is based on multiple considerations.

In the first instance, the references to "legitimate purpose" and "legitimate news gathering activities" were physically separated by several sentences in the instruction, thereby sharply reducing the possibility that the latter might have been viewed as modifying the former. Further, and perhaps more important, the judge's description of the First Amendment protections and his explanation of how they were applicable to the present case provided a very clear framework for understanding what the judge intended by referring to "legitimate news gathering activities." Indeed, this portion of the instruction, while adjacent

---

monwealth v. *Abramms*, 66 Mass. App. Ct. 576, 589 (2006) (Brown, J., concurring), the crime of disorderly conduct potentially embraces conduct protected by the First Amendment. In order to avoid impermissible conflict with constitutional protections, the court in *A Juvenile, supra*, engrafted a savings clause onto § 53, holding that the provision may be applied only "to conduct which involves no lawful exercise of a First Amendment right." *Commonwealth* v. *A Juvenile, supra* at 599. "Legitimate news gathering activities" typically would receive some measure of First Amendment protection.

to the discussion of the elements of disorderly conduct, was, in our view, a separate and distinct portion of the charge, and would have been understood as such by any reasonable juror. See *Commonwealth* v. *Rosa,* 422 Mass. 18, 27-29 (1996) (jury may be credited with reasonable sophistication in understanding separate meaning of related instructions).

In view of these circumstances, we conclude that there was no risk of any confusion as to the meaning of "legitimate purpose," and certainly none that rises to the level of a substantial risk of a miscarriage of justice. The judge was asked by the defendant to instruct on relevant First Amendment principles and, quite reasonably, did so in close proximity to the instruction on the elements of disorderly conduct. The mere fortuitous repetition of the word "legitimate" by no means was sufficient to infect the charge with fatal error.

Next, the defendant claims that the judge's statement to the effect that the jury "may not convict the defendant if his actions were based on legitimate news gathering activities" improperly shifted the burden of proof by suggesting that the defendant bore responsibility for proving that his actions amounted to constitutionally protected conduct. We see no such potential in the instruction. The judge, quite correctly (and, as noted, at the defendant's express urging), informed the jury of a range of conduct that was exempt from prosecution under § 53. The instruction conveyed the simple message that if any of the acts described by the Commonwealth in meeting its burden of proof fell within that category of conduct, no lawful conviction was possible. The judge did not suggest in any way that the defendant was required to adduce evidence supporting such an inference.

It is only fair to observe, however, that the judge did not expressly emphasize that the government bore the burden of proving that the defendant's acts were *not* protected by the First Amendment. Whether such an instruction might ever be required is something of a vexed question. As noted, in *Commonwealth* v. *A Juvenile,* 368 Mass. 580 (1975) (*A Juvenile*), the Supreme Judicial Court found it necessary to limit the scope of § 53, at least when the government proceeds under a public inconvenience or annoyance theory, by adding the requirement that

"[§ 53] relate[s] exclusively to activities which involve no law-ful exercise of a First Amendment right." *Id.* at 597. Absent such a construction, the Supreme Judicial Court determined that the provision would be impermissibly overbroad. While, ordinarily, a defendant is required to press his claim that conduct, although otherwise criminal, is nonetheless constitu-tionally sheltered through the medium of a motion to dismiss, see, e.g., *Commonwealth* v. *Williams*, 395 Mass. 302, 303 (1985), it is at least arguable that the holding in *A Juvenile* might place a burden on the Commonwealth to prove that a defendant's acts "involve no lawful exercise of a First Amend-ment right."[11] *A Juvenile, supra.* In any event, it has not been made to appear that reversal is required.

The judge, as noted, carefully explained that constitutionally protected acts could *not* provide a basis for conviction — without suggesting in any way that the defendant was required to offer proof of same. When combined with the judge's instruction that, to obtain a conviction, the government was required to prove each and every element beyond a reasonable doubt, the instruc-tion was adequate. See *Commonwealth* v. *Dane Entertainment Servs., Inc.*, 389 Mass. 902, 915 (1983) (description of elements that incorporates First Amendment standard coupled with basic instruction on the government's burden of proof adequate to protect defendant's constitutional rights); *Commonwealth* v. *Sinai*, 47 Mass. App. Ct. 544, 547 (1999) (approving instruction

---

[11]Such a requirement would not necessarily impose insurmountable eviden-tiary burdens on the Commonwealth. As noted, the government is already required to offer proof of the absence of any "legitimate purpose" on the part of the defendant to obtain a conviction for disorderly conduct on the theory that a defendant created a "hazardous or physically offensive condition." Requiring such negative forms of proof is but one of the many difficult features of § 53 resulting from its "tortured history" of common law emen-dation. See *Commonwealth* v. *Sholley*, 432 Mass. at 727. Indeed, the Supreme Judicial Court acknowledged in *A Juvenile* that its reformation of § 53 by no means addressed all potential constitutional concerns relating to that provision. As the court observed: "We take this opportunity to observe that . . . parts of [§ 53 remain] . . . constitutionally suspect. . . . In a series of cases we have attempted to save by judicial construction the bare bones of § 53. However, at some point the foundation of the statute may be insufficient to support the weight of added judicial construction on judicial construction." 368 Mass. at 598-599.

that simply exempts some forms of conduct from purview of § 53 for purpose of protecting constitutional rights).

Bolstering our conclusion in this regard is the fact that the evidence strongly supported a conviction of disorderly conduct under a theory of either fighting or violent behavior, as to which First Amendment considerations are inapplicable. See *Commonwealth* v. *Sholley, supra* at 728 & n.8; *Commonwealth* v. *Maynard,* 436 Mass. 558, 571 (2002). Further, we are again mindful of the fact that the instruction now challenged was offered at the specific request of trial counsel, imposing on him a very heavy burden of persuasion in establishing, on appeal, that the charge was improper. See *Commonwealth* v. *Knight,* 37 Mass. App. Ct. 92, 99-100 & n.2 (1994). Finally, regardless of the source of the information, the jury here were, in fact, informed of the defendant's news reporting activities. Considering all these factors, we conclude that no substantial risk of a miscarriage of justice is posed.

*Judgments affirmed.*