COOPER, COMMONWEALTH vs., 100 Mass. App. Ct. 345

 
 COMMONWEALTH vs. MARKUS COOPER.

100 Mass. App. Ct. 345
 June 3, 2021 - October 8, 2021

Court Below: District Court, Worcester Division
Present: Massing, Sacks, & Singh, JJ.

 

Evidence, Photograph, Argument by prosecutor, Consciousness of guilt, Credibility of witness. Idle and Disorderly Person. Practice, Criminal, Argument by prosecutor. Statute, Construction. Privacy. Witness, Credibility.

At a criminal trial, the evidence was sufficient to convict the defendant of photographing a person who is nude or partially nude, G. L. c. 272, § 105 (b), first par., where nothing in the plain language of the statute required the Commonwealth to produce a photograph, and where the jury could infer that the "nondistinct sound" that the victim heard from the cell phone camera pointed into the bathroom stall where she was urinating was a camera click, and that the defendant's behavior immediately thereafter (i.e., his flight from the bathroom) demonstrated that he had taken a photograph and that, caught in the act, he fled so that he could destroy the evidence. [347-350]

At a criminal trial, the evidence was sufficient to convict the defendant of disorderly conduct, G. L. c. 272, § 53 (b), where causing the victim to reasonably fear imminent physical harm was not an element of the crime, and where the defendant's voyeuristic behavior created a physically offensive condition in violation of the victim's legitimate expectation of privacy while using a private stall in a bathroom of a medical school building. [351-353]

At a criminal trial, the prosecutor's closing argument did not create a substantial risk of a miscarriage of justice, where, in response to the defendant's timely objection or request for a curative instruction, the judge specifically addressed each objectionable aspect of the argument, thereby removing any potential prejudice. [353-357]

There was no merit to the defendant's assertion that the prosecutor engaged in misconduct by arguing an inference that the defendant had deleted a certain photograph, where the prosecutor's argument did not exploit suppressed evidence. [357-358]

COMPLAINT received and sworn to in the Worcester Division of the District Court Department on October 21, 2015. 

 The case was tried before Jennifer L. Ginsburg, J. 

 Michelle Menken for the defendant.

 Susan M. Oftring, Assistant District Attorney, for the Commonwealth.

 Page 346 

 MASSING, J. A student at the University of Massachusetts (UMass) Medical School was urinating in a stall in a women's bathroom when she noticed a cell phone camera being pointed down at her from over the top of the stall and heard what she believed to be the camera clicking. Based on this incident, a jury convicted the defendant, Markus Cooper, of one count of photographing a person who is nude or partially nude, see G. L. c. 272, § 105 (b), first par., and one count of disorderly conduct, see G. L. c. 272, § 53 (b). In this appeal we consider, among other issues, whether the Commonwealth can prove a violation of the first paragraph of G. L. c. 272, § 105 (b), without producing a photograph of the victim. We conclude that the evidence was sufficient to convict the defendant of all counts and that the defendant's claims of error with respect to the prosecutor's closing argument do not warrant reversal.

 Background. We recite the facts in the "light most favorable to the Commonwealth," Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), reserving certain details for later discussion.

 The victim was urinating in a private stall in the women's room on the fourth floor of the medical school's Albert Sherman Center, squatting above the toilet with her shorts pulled down, when she saw a man's shoe at the base of the stall. She looked up and saw a cell phone camera "peering into the stall" and "one knuckle" of a hand. She then "heard a nondistinct sound. It could have been a camera, click." 

 The victim screamed, "What are you doing?" and then "heard someone run out of the bathroom." She pulled up her shorts so quickly that she urinated on herself, then left the bathroom. She noticed that the nearby "men's room door was open but on its way to close and [she] saw in the mirror somebody in the men's room hastily getting into a bathroom stall." The victim stood at the door of the men's room and asked the person, the defendant, what he was doing. He replied that he had been on his cell phone and had gone into the wrong restroom. The victim asked to see the defendant's phone, which he took from his pocket, "briefly engaged," and placed back into his pocket, saying, "I didn't take any pictures of you." 

 The victim asked the defendant to accompany her to security. When he refused, she asked to see his medical school identification badge so she could report his name and department. The defendant said, "I'm not giving you my badge and if you knew who I was, then you wouldn't be doing this." The defendant was,

 Page 347 

 in fact, a physician and medical school assistant professor with an office on the seventh floor of the same building. The defendant left the bathroom and entered the adjacent stairwell, the victim following him. She introduced herself as a medical student and again asked for his name, which he refused to give. The defendant went down a flight of stairs, gaining speed as he went. The victim asked a woman she encountered in the stairwell to help her. The defendant exited the stairwell and ran across the third floor with the two women in pursuit. Although they lost sight of him, security footage showed the defendant crossing a bridge linking the Sherman Center building to the parking garage, getting into his car, and driving away. 

 The victim called security from the medical school library and gave a statement to UMass police. Meanwhile, the defendant called security from his car and asked for directions to the campus police station. He arrived at the station about thirteen minutes later, where he also gave a statement. An officer asked to see the defendant's cell phone; the defendant entered his passcode and handed the phone to the officer. The officer did not find any photographs of the victim on the defendant's phone. [Note 1]

 Discussion. 1. Photographing a person who is nude or partially nude. The first paragraph of G. L. c. 272, § 105 (b), provides: 

"Whoever willfully photographs, videotapes or electronically surveils another person who is nude or partially nude, with the intent to secretly conduct or hide such activity, when the other person in such place and circumstance would have a reasonable expectation of privacy in not being so photographed, videotaped or electronically surveilled, and without that person's knowledge and consent, shall be punished by imprisonment in the house of correction for not more than 2 1/2 years or by a fine of not more than $5,000, or by both 

 Page 348 

such fine and imprisonment."

At trial, the Commonwealth argued that the defendant photographed the partially nude victim with his cell phone while she was urinating in the women's bathroom and deleted the photograph before he appeared at the campus police station to give a statement. The defendant contends that because the Commonwealth did not produce a photograph of the victim in a state of partial nudity, the evidence was insufficient, showing at most an attempt to photograph the victim. [Note 2] 

 In reviewing the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Latimore, 378 Mass. at 677, quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). "A conviction may be based on circumstantial evidence and the permissible inferences drawn therefrom." Commonwealth v. Roy, 464 Mass. 818, 824 (2013). "A permissible inference is one that is 'reasonable and possible'; it need not be 'necessary or inescapable.'" Id., quoting Commonwealth v. Casale, 381 Mass. 167, 173 (1980). Where the evidence permits conflicting inferences, "it is for the jury to determine where the truth lies." Commonwealth v. Witkowski, 487 Mass. 675, 681 n.6 (2021), quoting Commonwealth v. Garuti, 454 Mass. 48, 55 (2009).

 To prove a violation of the first paragraph of § 105 (b), [Note 3] the Commonwealth must show "that the defendant (1) willfully photographed, 

 Page 349 

videotaped, or electronically surveilled; (2) another person who was nude or partially nude; (3) with intent to secretly conduct or hide his activity; (4) when the other person was in a place and circumstance where she or he would have a reasonable expectation of privacy in not being so photographed; and (5) without the other person's knowledge or consent." Commonwealth v. Castro, 99 Mass. App. Ct. 502, 505 (2021). Only the first element is in dispute.

 Nothing in the plain language of the first paragraph of § 105 (b) requires the Commonwealth to produce a photograph depicting a nude or partially nude person. "A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." Commonwealth v. Wassilie, 482 Mass. 562, 573 (2019), quoting Sullivan v. Brookline, 435 Mass. 353, 360 (2001). Section 105 (b) criminalizes the act of "photograph[ing], videotap[ing] or electronically surveil[ling]." G. L. c. 272, § 105 (b). See Commonwealth v. Robertson, 467 Mass. 371, 377-378 (2014), quoting G. L. c. 272, § 105 (b) ("§ 105 [b] does not penalize the secret photographing of partial nudity, but of 'a person who is . . . partially nude' [emphasis added]. 'Is' denotes a state of a person's being, not a visual image of the person"). Section § 105 (c), by contrast, penalizes dissemination of a "visual image" obtained in violation of § 105 (b). See G. L. c. 272, § 105 (c). 

 The difference between the crime of photographing an unsuspecting person in a state of nudity or partial nudity under § 105 (b) and the crime of disseminating a "visual image" so obtained under § 105 (c) is the same difference that exists between posing a child in a state of nudity in violation of G. L. c. 272, § 29A, and disseminating or possessing child pornography in violation of G. L. c. 272, § 29B or § 29C. "[T]he harm sought to be proscribed by § 29A is the conduct involved in photographing a child nude or semi-nude, not the photographs themselves." Commonwealth v. Oakes, 407 Mass. 92, 97 (1990). Likewise, the focus of § 105 (b) is on "the violation of an individual's privacy. Criminalizing the photographing, videotaping, or electronic surveillance of the victim effectuates the statute's purpose -- to protect the victim's privacy and to penalize the invasion of that privacy." Wassilie, 482 Mass. at 570. The violation of the victim's privacy was accomplished when the defendant pointed his camera at her and snapped her photograph.

 Page 350 

 The defendant further argues that without a photograph, the Commonwealth can prove no more than an attempt; it cannot prove that the defendant completed the act. He posits that "[t]he attempt might have resulted in a 'misfire' -- i.e., an image was captured but it did not include [the victim] . . . -- or in no image at all." We conclude that the evidence was sufficient to prove beyond a reasonable doubt that the defendant photographed the victim in a state of partial nudity.

 "The fact that there is no direct evidence . . . does not render the evidence incompetent." Commonwealth v. Marquetty, 416 Mass. 445, 452 (1993). See Commonwealth v. Manzelli, 68 Mass. App. Ct. 691, 693-694 (2007) (circumstantial evidence sufficient to sustain conviction of making unlawful secret recording in violation of wiretapping statute, G. L. c. 272, § 99, even where no audio tape was produced at trial). "A conviction may be based on circumstantial evidence alone, as long as that evidence is sufficient to find the defendant guilty beyond a reasonable doubt," Commonwealth v. Platt, 440 Mass. 396, 401 (2003), and "no essential element . . . rest[s] on surmise, conjecture or guesswork." Commonwealth v. Jones, 59 Mass. App. Ct. 157, 160 (2003), S.C., 441 Mass. 73 (2004). 

 The victim testified that while she was in a state of partial nudity -- she had pulled down her shorts and was hovering over a toilet in the process of urinating -- she saw a cell phone camera "peering into the stall," pointed toward her. In her compromised position she heard a "nondistinct sound," like a "click," which she inferred, as could the jury, was the camera taking her photograph. Moreover, the jury could infer from the defendant's behavior immediately thereafter that he had taken a photograph and, caught in the act, took flight so he could destroy the evidence. See Manzelli, 68 Mass. App. Ct. at 694-695 ("While evidence of consciousness of guilt is never sufficient, standing alone, to support a conviction, it may be considered by the jury in combination with other inculpatory facts in determining whether the government has met its burden of proof").

 The inferences a jury may draw "need only be reasonable and possible and need not be necessary or inescapable." Casale, 381 Mass. at 173. Viewed in the light most favorable to the Commonwealth, the evidence and reasonable inferences drawn therefrom were sufficient to permit the jury to conclude, beyond a reasonable doubt, that the defendant photographed the partially nude victim.

 Page 351 

 2. Disorderly person. The defendant also challenges the sufficiency of the evidence underlying his conviction for disorderly conduct under G. L. c. 272, § 53. The statute punishes a variety of conduct. See Commonwealth v. LePore, 40 Mass. App. Ct. 543, 545 (1996) ("§ 53, which has long lineage, is a vessel into which the Legislature has tossed a variety of conduct thought sufficiently offensive to society to be declared criminal"). It provides punishment for "disorderly persons" under what is now § 53 (b), and for "persons who with offensive and disorderly acts or language accost or annoy another person" under what is now § 53 (a). [Note 4] The crimes are distinct. "Whereas disorderly conduct under the disorderly person provision must have a public impact, the crime of accosting or annoying [another person] evinces a legislative intent to criminalize offensive and disorderly conduct or language that has a personal and private, rather than a necessarily public, impact." Commonwealth v. Chou, 433 Mass. 229, 233 (2001).

 The defendant was charged, tried, and convicted as a disorderly person. The disorderly person provision "requires proof that a person, 'with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof,' engaged in 'fighting or threatening, or in violent or tumultuous behavior' or created 'a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.'" Commonwealth v. Accime, 476 Mass. 469, 472-473 (2017), quoting Commonwealth v. Sholley, 432 Mass. 721, 727 n.7 (2000), cert. denied, 532 U.S. 980 (2001). The defendant argues that with respect to the creation of a "physically offensive condition," the Commonwealth failed to prove that his actions "would cause a reasonable person to fear imminent physical harm." Commonwealth v. Sullivan, 469 Mass. 621, 627 (2014), citing Commonwealth v. Cahill, 446 Mass. 778, 779, 781-783 (2006). See Commonwealth v. Whiting,

 Page 352 

 58 Mass. App. Ct. 918, 920 (2003).

 Causing the victim to reasonably fear imminent physical harm is not an element of being a disorderly person. Sullivan, Cahill, and Whiting all involved convictions for accosting or annoying another person. "Though physically offensive conduct can form the basis of both a disorderly person offense under G. L. c. 272, § 53, and an accost and annoy offense under the same statute, the elements of the two crimes are somewhat different." Commonwealth v. Ramirez, 69 Mass. App. Ct. 9, 18 n.11 (2007). See Chou, 433 Mass. at 232-233 ("Where, as here, the various and sundry crimes under a single statute are as different as they are similar, we look to the same source to construe the same word but tailor the construction to fit the particular crime charged, ever mindful of ordinary usage and legislative purpose").

 It is well established that voyeurism, or being a "Peeping Tom," see LePore, 40 Mass. App. Ct. at 546 & n.4, may be punished under the disorderly person provision. See Chou, 433 Mass. at 234; Commonwealth v. Swan, 73 Mass. App. Ct. 258, 262-263 (2008); LePore, supra at 548. The "extreme invasion of personal privacy" that occurs in the act of voyeurism creates the requisite physically offensive condition. Cahill, 446 Mass. at 782. See Chou, supra, quoting LePore, supra ("voyeurism 'created a physically offensive condition'"). "Acting the 'Peeping Tom' offends and results in disorder by invading the privacy of persons precisely where they are most entitled to feel secure -- where they live and rest." LePore, supra at 549. The victim of the physically offensive act of voyeurism does not even need to be aware of it. See Cahill, supra; LePore, supra. It follows that the victim does not need to be put in fear of imminent physical harm. [Note 5]

 The evidence was sufficient to show that the defendant's voyeuristic behavior created a physically offensive condition as we

 Page 353 

 have construed that term under the disorderly person provision of § 53. By following the victim into the bathroom, standing right outside her stall, and pointing his camera inside while she was urinating, the defendant created a physically offensive condition. See, e.g., LePore, 40 Mass. App. Ct. at 544-545 (defendant stood in alley, opened victim's ground-level bedroom window and screen, and watched her sleeping in her bed, unaware of his presence). 

 Although we have "implicitly noted the . . . limitations" of the voyeurism concept of disorderly conduct, "at its core, the concept is designed to protect the legitimate and widely shared expectations of privacy possessed by those who have purposely closed themselves off from public view in an enclosed space or area." Swan, 73 Mass. App. Ct. at 263-264. The victim had such an expectation of privacy when she entered a private stall in a bathroom of the medical school building, and the defendant created a physically offensive condition within the settled construction of the disorderly persons provision when he invaded that space. Contrast id. at 259, 264-265 (evidence insufficient to convict defendant as disorderly person where conduct took place in elementary school boy's lavatory in area with "five urinals in a row, all without doors," to which defendant had access; readily apparent "open character" of urinals made area "insufficiently private to trigger the prohibitions embodied in the Peeping Tom or voyeurism theory of disorderly conduct"). Thus, the evidence was sufficient to support the defendant's conviction for being a disorderly person. 

 3. Prosecutor's closing argument. The defendant asserts that the prosecutor's closing argument was so "riddled with misstatements, burden shifting, witness vouching, and disregard of court instruction" that reversal of both convictions is warranted. In particular, the defendant claims that the prosecutor improperly argued consciousness of guilt after the judge declined to instruct the jury on the issue; that the prosecutor shifted the burden of proof by arguing that the surveillance videos did not corroborate certain of the defendant's exculpatory statements; that she impermissibly argued that the victim was credible; and that the evidence did not support the prosecutor's statements that the defendant was six feet tall and waited in the men's room for the victim to enter the women's room. The defendant timely objected or requested a curative instruction to these arguments, and the judge gave curative instructions with respect to each. The defendant also asserts, for the first time on appeal, that the prosecutor 

 Page 354 

improperly argued that he deleted the photograph of the victim before he arrived at the UMass police station.

 We consider the prosecutor's remarks "in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial." Commonwealth v. Martinez, 476 Mass. 186, 200 (2017), quoting Commonwealth v. Viriyahiranpaiboon, 412 Mass. 224, 231 (1992). Where, as here, "the objection[s] to the closing argument [were] followed by focused, particularized instructions," to which defense counsel did not object, and in most cases expressly assented to, "we must determine whether any error created a substantial risk of a miscarriage of justice." Commonwealth v. Beaudry, 445 Mass. 577, 587 (2005). See Mass. G. Evid. § 1113(c) (2021).

 a. Consciousness of guilt. The surveillance videos showed that after the victim confronted him, the defendant fled through the stairwell, across the medical school building, to his car in the parking garage, and drove off. At the charge conference before closing arguments, the prosecutor requested an instruction on consciousness of guilt. The judge declined, stating that, in her view, the instruction was not warranted because the defendant turned himself in to the police "in very short order." In her closing, the prosecutor nonetheless argued that the defendant "ran and he ran fast . . . because he knew what he had just done and he wasn't about to be caught. That, ladies and gentlemen, is consciousness of guilt." 

 Upon defense counsel's objection, the judge correctly concluded that the prosecutor's argument was permissible even in the absence of a jury instruction. [Note 6] Defense counsel requested a curative instruction, and did not object to the one proposed by the judge. (Indeed, counsel stated that the judge's proposed instruction was "perfect.") The judge ultimately instructed the jury, with specific reference to the prosecutor's closing argument, that they were not required to infer that the defendant's flight showed consciousness of guilt, or even to consider that evidence in 

 Page 355 

assessing the defendant's guilt. If they did, the judge made clear that "a person having feelings of guilt is not necessarily guilty, in fact, for such feelings are sometimes found in innocent people," and that the jury could not find the defendant guilty solely on that evidence. "The charge adequately cautioned the jury concerning the equivocal nature of evidence of flight." Commonwealth v. Toney, 385 Mass. 575, 583, 585 (1982). We presume the jury followed the judge's instruction, see Commonwealth v. Hammond, 477 Mass. 499, 507 (2017), which was specifically tailored to "alleviate[] the risk that the jury would rely on the [evidence] for an improper purpose." Commonwealth v. Silva, 482 Mass. 275, 291 (2019).

 b. Burden shifting. The defendant asserts that the prosecutor shifted the burden of proof to the defendant by commenting on the absence of video evidence corroborating the defendant's statements about his interaction with the victim and where he went after the interaction. [Note 7] Again, the judge provided a specific instruction to address the prosecutor's argument, emphasizing that the Commonwealth had the burden to prove the case beyond a reasonable doubt, that the defendant is presumed innocent and "has no obligation to present any evidence on his behalf," and that "[t]his burden of proof never shifts." The judge also instructed the jury that the closing arguments were not evidence. To the extent that the prosecutor's remark may have "signal[ed] to the jury that the defendant has an affirmative duty to bring forth evidence of his innocence, thereby lessening the Commonwealth's burden to prove every element of a crime," the judge's instructions cured any risk of prejudice. Commonwealth v. Trinh, 458 Mass. 776, 787 (2011). See id. at 788 (judge cured "any suggestion or implication of burden shifting" by instructing jury that defendant had no burden to present evidence and that closing arguments were not evidence, and by "emphasiz[ing] the Commonwealth's burden multiple times during her jury instructions"). See also Commonwealth v. Fernandes, 478 Mass. 725, 741-742 (2018) (no error where judge's instructions "highlighted the Commonwealth's sole possession of the burden of proof").

 Page 356 

 c. Vouching. In his closing, defense counsel underlined the inconsistencies between the victim's testimony and her prior statements, suggested that she jumped to conclusions and made assumptions, and called into question her credibility and "ability to observe." The prosecutor subsequently remarked in closing that the victim was "believable" and "credible," that her testimony was "believable and credible," that she had "no motive to lie," and that she had not been mistaken about what the defendant had been doing in the women's restroom. 

 "A prosecutor may not vouch for the credibility of witnesses," Fernandes, 478 Mass. at 743, or "argue[] that the [victim] was credible because of her willingness to testify." Commonwealth v. Dirgo, 474 Mass. 1012, 1013 (2016). See Beaudry, 445 Mass. at 587. However, "there is no categorical prohibition against suggestion by a prosecutor that a prosecution witness has no motive to lie." Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 179 (2008). A prosecutor may comment on "a witness's demeanor, motive for testifying, and believability, provided that such remarks are based on the evidence, or fair inferences drawn from it, and are not based on the prosecutor's personal beliefs." Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999). "Where, as here, defense counsel in closing argument challenges the credibility of the complainant, it is proper for the prosecutor to invite the jury to consider whether the complainant had a motive to lie and to identify evidence that demonstrates that the complainant's testimony is reliable." Dirgo, supra at 1014. See Mass. G. Evid. § 1113(b)(3)(B) note, at 459-460 (2021). 

 The prosecutor's comments on the victim's credibility were within the proper bounds of argument. Even if any of these arguments were improper, the judge alleviated any potential prejudice by specifically instructing the jury that "attorneys are not permitted to express their personal belief in the credibility of the witnesses who testified," and "[t]o the extent that the prosecutor here vouched for the credibility of the complaining witness, it was improper and you should disregard those comments," an instruction we presume the jury followed. See Hammond, 477 Mass. at 507.

 d. Arguments not based in evidence. Defense counsel requested a curative instruction with respect to the prosecutor's statements that the defendant was "approximately six feet or maybe under six feet" tall and that he had been waiting in the men's bathroom

 Page 357 

 "to hear who entered the women's bathroom." [Note 8] The judge agreed that the evidence did not support these two arguments and provided specific curative instructions that "[t]here was no evidence in this case about the defendant's height" or "that the defendant was waiting in the men's bathroom before the alleged victim entered the women's bathroom." In fact, the victim testified that the defendant was approximately five feet, ten inches tall, and the prosecutor's argument that the defendant had been near the women's restroom "waiting for someone to come" was a fair inference that could be drawn from surveillance tapes. See Commonwealth v. Kozec, 399 Mass. 514, 516 (1987) (prosecutor may "argue[] forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence").

 Even if these arguments were not supported by the evidence or fair inferences drawn therefrom, the judge's specific instructions removed any prejudice. This is not a case "in which the judge's instructions [were] not pointed enough to neutralize claimed errors in the prosecutor's argument." Commonwealth v. Correia, 65 Mass. App. Ct. 27, 37 n.8 (2005). The judge's highly particularized instructions eliminated any risk of a miscarriage of justice.

 e. Inference that defendant deleted the photograph. One could fairly infer that thirteen minutes between the time the defendant fled the medical school and reported to campus police gave him time to delete the photograph of the victim. Anticipating this argument -- "I'm sure the prosecutor is going to say, 'Where was he for fifteen minutes?'" -- defense counsel argued in his closing that such a conclusion would impermissibly be based "on conjecture or speculation or surmise." The prosecutor indeed argued that the defendant "got rid of that photograph and then went to the police station almost fifteen minutes later and decided to confront and address the situation." The prosecutor's argument was supported by the evidence and a fair response to the defendant's argument. See Commonwealth v. Mason, 485 Mass. 520, 539 (2020); Commonwealth v. Mattei, 90 Mass. App. Ct. 577, 583 (2016).

 Noting that the trial judge had allowed his motion to suppress certain evidence obtained from his cell phone (see note 1, supra), the defendant asserts for the first time on appeal that the prosecutor's

 Page 358 

 argument "exploited the absence of the suppressed evidence." See Commonwealth v. Carroll, 439 Mass. 547, 554 (2003) (prosecutor may not refer in closing to matter "that has been excluded from evidence" and may not "invit[e] an inference from the jury about the same excluded subject matter" [citations omitted]). Because trial counsel failed to object, "we determine whether the alleged error created a substantial risk of a miscarriage of justice." Commonwealth v. Robinson, 444 Mass. 102, 105 (2005). [Note 9]

 Although the defendant is correct that no photographs were discovered in the searches of his cell phone, he incorrectly asserts that this evidence was not "admissible here due to the suppression ruling." The suppression order excluded only the evidence of Internet searches; it did not determine that the discovery of the "Photo Vault" application, which could be used to hide photographs within a cell phone (see note 1, supra), exceeded the scope of the first search warrant. The defendant's assertion that the prosecutor engaged in "misconduct" by arguing an inference of deletion falls flat. The prosecutor's argument that the defendant deleted the photograph did not exploit suppressed evidence, let alone create a substantial risk of a miscarriage of justice. 

Judgments affirmed.

FOOTNOTES
[Note 1] The police obtained a warrant to search the defendant's cell phone in areas where photographs might be stored. However, exceeding the scope of the warrant, the police viewed the defendant's Internet browsing history, which led to a second warrant to view all of his Internet search activity. Ruling on the defendant's motion to suppress, the motion judge, who was also the trial judge, allowed the motion and suppressed any evidence of the defendant's Internet searches. The suppression order did not cover the discovery that around the time of the incident the defendant had used an application called "Photo Vault," which, the judge found, "allows a person to move and hide photos within a phone and to upload photos to the [I]nternet." At trial, neither the Commonwealth nor the defendant presented any evidence regarding the search of the defendant's phone. 

[Note 2] At the Commonwealth's request, and without objection by the defendant, the judge instructed the jury that the defendant was charged with "secretly photographing or electronically surveilling a nude or partially nude person" (emphasis added), even though the Commonwealth's proof focused on photographing rather than surveilling. ("Electronically surveils" and "electronically surveilled" are defined as "to view, obtain or record a person's visual image by the use or aid of a camera, cellular or other wireless communication device, computer, television or other electronic device." G. L. c. 272, § 105 [a]). The defendant now argues that because the electronic surveillance charge was not properly before the jury, the conviction cannot be sustained unless we conclude that the evidence of photographing the victim was sufficient -- which we do. 

[Note 3] The second paragraph of § 105 (b), which criminalizes photographing, videotaping, electronically surveilling, or attempting to view "the sexual or other intimate parts of a person under or around the person's clothing" -- a practice colloquially known as "upskirting," see Commonwealth v. Wassilie, 482 Mass. 562, 573-575 (2019) -- and the third paragraph, which makes the same conduct a felony if the subject is a child under eighteen, are not at issue. 

[Note 4] An outside section of the fiscal year 2010 budget, St. 2009, c. 27, § 98, rewrote the statute, which previously consisted of a single paragraph punishing "idle and disorderly persons," "persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex," and a variety of other conduct. See Commonwealth v. Dotson, 462 Mass. 96, 97-98 (2012) (discussing the 2009 amendments). A 2014 amendment replaced the words "persons of the opposite sex" with "another person." See St. 2014, c. 417. Notwithstanding the division of § 53 into two subsections and changes to the phrasing of the disorderly persons and accosting and annoying provisions, the copious decisional law construing these two crimes under prior versions of § 53 continues to govern the behavior prohibited under each. 

[Note 5] Consistent with the different emphases the case law has placed on the meaning of "physically offensive condition," the model instruction for disorderly conduct does not require the Commonwealth to prove that the defendant's actions would create a reasonable fear of imminent physical harm. See Instruction 7.160 of the Criminal Model Jury Instructions for Use in the District Court (2009). By contrast, the model instruction for "annoying and accosting persons" under § 53 includes language similar to the quoted language from Sullivan, 469 Mass. at 627. See Instruction 6.600 of the Criminal Model Jury Instructions for Use in the District Court (2016) (stating that if charge is based on threatening act, acts, or language, defendant's conduct or language must "make a reasonable person fearful, not just uncomfortable," but, citing Cahill, 446 Mass. at 783, noting that "[i]f the act was physically offensive, it need not also be threatening"; Instruction 6.600, supra at 4, note 5). 

[Note 6] Although the judge had declined to give the instruction, she did not direct the prosecutor to stay away from the topic. Unlike an argument that an inference should be drawn against the opposing party for failing to call a witness, which counsel may not make without first obtaining the judge's permission, see Commonwealth v. Broomhead, 67 Mass. App. Ct. 547, 550-551 (2006); Commonwealth v. Vasquez, 27 Mass. App. Ct. 655, 658 (1989), counsel may choose to argue consciousness of guilt without comment by the judge. See Commonwealth v. Simmons, 419 Mass. 426, 435-436 (1995). 

[Note 7] The prosecutor stated, "He was gone for thirteen minutes and for those thirteen minutes we don't know where he went. Defense counsel wants you to assume that he went to the [UMass] Memorial on Belmont Street. We don't know that. We don't have video surveillance of that." The prosecutor also argued, "And then he says that [the victim] grabbed his shirt. Yet we don't see that on surveillance video." 

[Note 8] The prosecutor also suggested that the defendant waited in the stairwell for someone to enter the women's room. The judge distinguished that argument from the prosecutor's suggestion that the defendant waited in the men's room, as "[t]here was no evidence [that he was] in the men's bathroom beforehand." 

[Note 9] Indeed, "the absence of an objection . . . from vigilant defense counsel is some indication that the comment did not land a foul blow that was unfairly prejudicial." Commonwealth v. Mazariego, 474 Mass. 42, 58 (2016). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.